A09A0548, A09A0549. LIFE CARE CENTERS OF AMERICA
v. SMITH (two cases).
(681 SE2d 182)

ANDREWS, Presiding Judge.

We granted Life Care Centers of America d/b/a Life Care Center of Gwinnett's (Life Care) application for interlocutory review of the trial court's order denying Life Care's motion to stay proceedings, dismiss the complaint, and compel arbitration of Angela Smith's claims for the wrongful death of her mother Gerith Petereit. Life Care stated that when Smith signed forms for her mother's admission to Life Care under the authority of a durable health care power of attorney given to her by Petereit, she also signed an agreement to arbitrate any dispute that might arise between the parties; therefore, the suit should be dismissed and the court should compel arbitration of the claims. The trial court disagreed, holding that under the language of the health care power of attorney given to her, Smith did not have the authority to bind her mother to arbitration. We agree and affirm.

This case arose after Petereit was admitted to Life Care Center of Gwinnett in August 2005 after suffering a stroke. She had been at Life Care less than a month when she suffered a blow to the head and died from the resulting brain damage. Smith then brought this action against Life Care and other individuals in connection with her mother's death.

Life Care moved to stay proceedings, dismiss the action and compel arbitration based on an arbitration agreement Smith signed

---

[17] See *Lewis,* supra.

at the time her mother was admitted to Life Care. This "Voluntary Agreement for Arbitration" provided for waiver of a jury trial and binding arbitration for "all disputes" arising between the resident and Life Care.

Smith signed the admission documents, including the agreement to arbitrate, under a Durable Power of Attorney for Health Care appointing Smith as Petereit's agent "to make any and all decisions for me concerning my personal care, medical treatment, hospitalization, and health care and to require, withhold, or withdraw any type of medical treatment or procedure, even though my death may ensue." The power of attorney goes on to discuss the issue of life-sustaining or death-delaying treatment in greater detail. For example:

> The above grant of power is intended to be as broad as possible so that your agent will have authority to make any decision you could make to obtain or terminate any type of health care, including withdrawal of nourishment[,] any fluids and other life-sustaining or death-delaying measures, if your agent believes such action would be consistent with your intent and desires.

The power of attorney also states:

> The purpose of this power of attorney is to give the person you designate (your agent) broad powers to make health care decisions for you, including power to require, consent to, or withdraw any type of personal care or medical treatment for any physical or mental condition and to admit you to or discharge you from any hospital, home, or other institution; but not including psychosurgery, sterilization, or involuntary hospitalization or treatment covered by Title 37 of the Official Code of Georgia Annotated.

In response to Life Care's motion to compel arbitration, Smith argued that the agreement to arbitrate was not enforceable because she did not have a general power of attorney for Petereit and had not been appointed conservator or guardian for Petereit. Smith pointed out that the Georgia Arbitration Act expressly excludes claims for medical malpractice, personal injury and wrongful death. OCGA § 9-9-2 (c) (1) and (10). Smith also argued that the agreement was unenforceable because the American Arbitration Association (AAA) was named as the arbitrator in the agreement and the AAA had already stated that it would not arbitrate the matter because it was against its policy to arbitrate these matters without a post-dispute

agreement to arbitrate.

In denying Life Care's motion to compel arbitration, the trial court held that the health care power of attorney did not give Smith the power to enter such an extensive arbitration agreement. The court concluded that because Smith did not have a general power of attorney and had not been appointed as a conservator or guardian, and because the power granted gave her only the limited authority to make decisions concerning Petereit's "personal care, medical treatment, hospitalization, and health care and to require, withhold, or withdraw any type of medical treatment," then Smith's authority was limited to decisions related to health care and not decisions related to the handling of potential contractual or negligence claims that might accrue.

The trial court also held that the arbitration agreement was unenforceable because it had become impossible to perform. The court noted that the agreement required the parties to submit the case to the AAA and that the AAA had already confirmed to counsel that it would not take the case.

1. In its first enumeration of error, Life Care contends that the trial court erred in concluding that the power of attorney signed by Petereit did not give Smith the legal authority to enter into the arbitration agreement. "We review the record in this case de novo to determine whether the trial court's denial of the motion to compel arbitration is correct as a matter of law." *Ashburn Health Care Center v. Poole*, 286 Ga. App. 24 (648 SE2d 430) (2007). We also note that

> the party seeking arbitration ... bears the burden of proving the existence of a valid and enforceable agreement to arbitrate. See *TranSouth Financial Corp. v. Rooks*, 269 Ga. App. 321, 324 (1) (604 SE2d 562) (2004). Such agreement is, at base, a contract, and the Federal Arbitration Act "does not require parties to arbitrate when they have not agreed to do so." *Volt Information Sciences v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 478 (109 SC 1248, 103 LE2d 488) (1989).

*Ashburn Health Care Center*, supra at 25. And, "[w]here there is a specific challenge attacking the validity of an arbitration agreement, the court and not the arbitrator should decide whether the arbitration provision is enforceable."[1] (Punctuation omitted.) *Harris v. Albany Lime &c. Co.*, 291 Ga. App. 474, 475 (662 SE2d 160) (2008).

---

[1] Life Care appears to be claiming that it is the arbitrator who should decide whether the arbitration agreement is valid, citing *Preston v. Ferrer*, 552 U. S. 346 (128 SC 978, 169 LE2d

YALE LAW LIBRARY

We agree with the trial court that the plain language of the health care power of attorney did not give Smith the power to sign away her mother's or her mother's legal representative's right to a jury trial. Although Life Care argues that the power of attorney states that the power granted is intended to be as broad as possible, that broad grant of power is "so that your agent will have authority to make any decision you could make to obtain or terminate any type of health care. . . ." We note that the agreement to arbitrate was optional and it is not contended in this case that in order for Petereit to be admitted to Life Care, Smith was required to sign the agreement to arbitrate.

Life Care relies on *Owens v. Nat. Health Corp.*, 263 SW3d 876 (Tenn. 2007) as the best supporting authority for its argument. In *Owens*, the court held that the durable power of attorney for health care authorized the representative to sign an agreement to arbitrate. But the power of attorney in that case is worded differently than the one before us. That health care power of attorney also stated:

> I grant to my Attorney-in-Fact the power and authority to execute on my behalf any waiver, release or other document which may be necessary in order to implement the health care decisions that this instrument authorizes my Attorney-in-Fact to assist me to make, or to make on my behalf.

Id. at 880. This language is important because it appears that in order to have the resident admitted to the nursing home, her agent may have been required to sign the arbitration agreement. Id. at 888-889. Under these facts, the court held that the agent had the power to sign the agreement, but that the case must be remanded for further proceedings on the question of whether the arbitration clause was an unconscionable and therefore unenforceable contract of adhesion. Id. at 890. Therefore, we find *Owens* inapplicable to this case.

Likewise we find the remaining cases cited by Life Care and other similar cases are not on point.[2]

---

917) (2008). However, *Preston* holds that questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, but not "discrete challenge[s] to the validity of the arbitration clause." Id. at 984.

[2] See *Covenant Health Rehab of Picayune, L.P. v. Brown*, 949 S2d 732 (Miss. 2007) (both resident and daughter signed the agreement to arbitrate and no issue of a health care power of attorney was raised); *Ruesga v. Kindred Nursing Centers West*, 161 P3d 1253, 1263 (Ariz. App. 2007) (did not involve a health care power of attorney but court found that the parties' long history of the wife making decisions on husband's behalf gave rise to an agency relationship); *Carraway v. Beverly Enterprises Alabama*, 978 S2d 27, 30-31 (Ala. 2007) (did not involve a health care power of attorney but rather a general power of attorney); *Briarcliff*

Although there are no Georgia cases directly on point,[3] *Ashburn Health Care Center v. Poole*, supra, is helpful. In *Poole*, a husband signed papers, including an arbitration agreement, when admitting his wife to a nursing home. The husband did not have a power of attorney but instead signed the papers as the "authorized representative" for his wife. Id. at 26. This court held that there was no evidence the wife knew about the arbitration agreement, authorized her husband to sign the agreement or otherwise agreed to arbitrate all claims arising out of her nursing home stay. Id.

In looking at other state's case law directly on point, we note that other states have reached this same conclusion, holding that a health care power of attorney was insufficient to bind the principal. See *McNally v. Beverly Enterprises*, 191 P3d 363 (Kan. App. 2008) (durable power of attorney for health care did not encompass authority to sign arbitration agreement); *Blankfeld v. Richmond Health Care*, 902 S2d 296 (Fla. App. 2005) (holder of health care proxy did not have authority to bind nursing home patient to arbitrate claims); *Texas Cityview Care Center v. Fryer*, 227 SW3d 345, 352 (Tex. App. 2007) (nothing in medical power of attorney indicates that it was intended to confer authority to make legal, as opposed to, health care decision). Also, in *Mississippi Care Center of Greenville, LLC v. Hinyub*, 975 S2d 211 (Miss. 2008), the court determined that the execution of an arbitration agreement is considered a health care decision within the authority of a health care surrogate, *only* when that arbitration provision is *required* for

---

*Nursing Home v. Turcotte*, 894 S2d 661, 664 (Ala. 2004) (involved two cases and the signatories to the admission agreements were each personal representatives of the admittee, one signing as a " 'Fiduciary Party,' " and the other signing as " 'Attorney-In-Fact under a validly executed power of attorney' "); *Hogan v. Country Villa Health Svcs.*, 148 Cal. App. 4th 259, 262, 55 Cal. Rptr. 3d 450, 451 (Cal. Ct. App. 2007) (ruling based on provisions in California's Health and Safety Code providing for admissions to nursing homes); *Garrison v. Superior Court of Los Angeles County*, 132 Cal. App. 4th 253, 256, 33 Cal. Rptr. 3d 350, 352 (Cal. Ct. App. 2005) (holding that the health care power of attorney gave agent the power to sign arbitration agreement but under a differently worded power of attorney); *Moffett v. Life Care Centers of America*, 187 P3d 1140, 1143 (Colo. App. 2008) (agents had both a medical durable power of attorney and a general power of attorney); *Alterra Healthcare Corp. v. Estate of Linton*, 953 S2d 574, 579 (Fla. App. 2007) (did not involve a health care power of attorney); *Forest Hill Nursing Center v. McFarlan*, 995 S2d 775 (Miss. App. 2008) (did not reach issue of whether health care surrogate could bind patient because there was no determination that patient was incapacitated); *Sanford v. Castleton Health Care Center*, 813 NE2d 411, 414 (Ind. Ct. App. 2004) (parties did not specifically raise the issue of whether the medical power of attorney gave the daughter power to bind the mother to arbitration, and signing the arbitration agreement was a prerequisite to the mother's admission to the nursing home).

[3] We note that this court recently decided the case of *Triad Health Mgmt. of Ga. v. Johnson*, 298 Ga. App. 204 (679 SE2d 785) (2009). *Triad* is not on point because it involved a general power of attorney giving the attorney "full power and authority to do and perform all and every act . . . necessary, requisite or proper to be done, as fully . . . as I might or could do if personally present, and without specific limitation." Id.

YALE LAW LIBRARY

admission to the nursing home.

Therefore, having found no persuasive authority to the contrary and for the reasons stated above, we conclude that the trial court did not err in holding that the health care power of attorney given by Petereit to Smith did not authorize Smith to bind Petereit to arbitration of any and all claims arising out of her care at Life Care.

2. In light of our holding in Division 1, we need not address Life Care's remaining enumeration arguing that the trial court erred in concluding that the arbitration agreement became impossible to perform when the AAA refused to take the case.

3. In Case No. A09A0549, Life Care argues that Smith's counsel, John Mabrey, previously executed a settlement agreement on behalf of a different client that contains language bearing on Mabrey's ability to represent other clients in actions against Life Care. Life Care did not file a motion to disqualify Mabrey in this case, but instead filed a motion to compel arbitration to enforce a prior settlement agreement in another case by removing Mabrey as plaintiff's counsel in this action. The trial court denied the motion, citing *State of Ga. v. McMillan*, 253 Ga. 154, 164 (319 SE2d 1) (1984), and the rule that "matters relating to the practice of law . . . are within the inherent and exclusive power of the Supreme Court of Georgia."

Life Care argued below and on appeal that under the settlement agreement at issue, plaintiff's counsel was required to maintain the confidentiality of all the information produced during discovery for a period of three years. In addition, Life Care contended that under paragraph 16 of the agreement titled "Future Retainer of Plaintiffs' Counsel," Plaintiff's counsel's firm was "deemed hired and retained as counsel on behalf of [Life Care]." Life Care argued that the clear intent of the parties was to preclude Plaintiff's counsel from pursuing claims against Life Care for a period of three years. Finally, Life Care contends that this matter is subject to the arbitration clause in the settlement agreement, providing that: "Any dispute arising out of, related to, or in connection with this Agreement shall be submitted to and resolved by arbitration before a single arbitrator of the American Arbitration Association."

In response, Mabrey submitted an affidavit stating that although the Agreement provided that "if requested" he would agree to be retained for a period of three years by the law firm of Baker Donelson to provide advice as to how Life Care could improve, Baker Donelson never requested or retained him to provide such advice. The affidavit stated that the law firm had never provided professional advice or services to Baker Donelson or to Life Care and therefore never had any attorney-client relationship with either entity such that the Georgia Rules of Professional Conduct would

prohibit Mabrey from representing Smith in this case. Mabrey points out that Life Care is requiring the court to wrongfully assume that he has violated the confidentiality provision of the agreement without pointing to any instance of his having done so. Further, Mabrey argues that this interpretation of the agreement violates Rule 5.6 (b) of the Georgia Rules of Professional Conduct, which provides: "A lawyer shall not participate in offering or making an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties." Mabrey also stated in his affidavit that he has divulged no confidential information in his representation of Smith and does not have in his possession any documents or case information produced in the previous cases.

Despite its characterization of its motion to the trial court, Life Care is not seeking to enforce the settlement agreement, but rather to disqualify Mabrey from representing Smith in this case. Beyond conclusory allegations, Life Care has not shown that Mabrey has violated any provision in the agreement merely by accepting Smith as a client. It is possible that Life Care may have a claim for breach of the agreement against Mabrey but there is no evidence of this and that issue is not before us.

> The right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution. . . . Because of the right involved and the hardships brought about, disqualification of chosen counsel should be seen as an extraordinary remedy and should be granted sparingly.

*Bernocchi v. Forcucci*, 279 Ga. 460, 462 (614 SE2d 775) (2005). Moreover, "[t]he ultimate determination of whether an attorney should be disqualified from representing a client in a judicial proceeding rests in the sound discretion of the trial judge." (Punctuation omitted.) *Duvall v. Bledsoe*, 274 Ga. App. 256, 258 (617 SE2d 601) (2005). We find no abuse of discretion in the trial court's determination in this case.

*Judgments affirmed. Miller, C. J., and Barnes, J., concur.*

DECIDED JUNE 18, 2009 —
RECONSIDERATION DENIED JULY 7, 2009 —

*Hanks & Brookes, Craig A. Brookes, Joan M. Gutermuth*, for appellant.

*Beltran & Chandler, Frank J. Beltran, John G. Mabrey, Carla R. Mabrey, Charles M. Cork III*, for appellee.

*Arnall, Golden & Gregory, Glenn P. Hendrix, Jason E. Bring, W. Jerad Rissler, Robin F. Clark, Doffermyre, Shields, Canfield & Knowles, Ralph I. Knowles, Jr., Pope & Howard, J. Marcus Howard,* amici curiae.