# FOR PUBLICATION



ATTORNEYS FOR APPELLANTS:

**V. SAMUEL LAURIN, III**
**BRYAN H. BABB**
**KEVIN M. QUINN**
Bose McKinney & Evans, LLP
Indianapolis, Indiana

**MARC A. SANCHEZ**
**PHILLIP J. TRUAX**
Frantz Ward, LLP
Cleveland, Ohio

ATTORNEYS FOR APPELLEE,
Barth Electric Co., Inc.:

**KARL L. MULVANEY**
**GERARD L. GREGERSON**
**AARON E. ROSE**
Bingham Greenebaum Doll, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE,
Roth Bros., Inc.:

**TASHA R. ROBERTS**
Wong Fleming, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE,
E.P.I. of Cleveland, Inc.:

**GEOFFREY M. GRODNER**
**JARED S. SUNDAY**
Mallor Grodner, LLP
Bloomington, Indiana

ATTORNEYS FOR APPELLEE,
Elbrecht Investments, LLC d/b/a
Elbrecht Concrete:

**GENE R. LEEUW**
**JOHN M. MEAD**
Leeuw Oberlies & Campbell, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| WELTY BUILDING COMPANY, LTD. and, | ) | |
| OHIO FARMERS INSURANCE COMPANY, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1206-PL-493 |
| | ) | |
| INDY FEDREAU COMPANY, LLC., et al., | ) | |
| | ) | |
| Appellees-Plaintiffs, | ) | |

---

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy W. Oakes, Judge
Cause No. 49D13-1111-PL-44182

---

**April 4, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Welty Building Company Ltd. ("Welty") and Ohio Farmers Insurance Company ("OFIC") appeal the trial court's denial of their motions to stay proceedings and to compel arbitration. We reverse and remand.

## Issue

The sole restated issue before us is whether the trial court properly concluded that Welty was not entitled to demand that its disputes with its subcontractors be submitted to arbitration.

2

Welty, which is based in Ohio, was the general contractor on a project to construct a new FBI headquarters in Indianapolis. The owner of the building was Indy Fedreau Company, LLC ("Fedreau"), which also is based in Ohio and would lease the building to the FBI. OFIC provided a contract performance bond on Welty's behalf for the project. Welty hired the following twenty-one subcontractors to work on the project: Architectural Granite & Marble, Inc. ("AGM"), Barth Electric Co, Inc. ("Barth"), Becker Landscape Contractors, Inc. ("Becker"), Brown Sprinkler Corporation ("Brown"), C.E. Reeve Roofing ("C.E. Reeve"), Certified Floorcovering Services, Inc. ("Certified"), Circle B Construction Systems, LLC ("Circle B"), Door & Hardware Installation of Indiana, Inc. ("Door & Hardware"), Elbrecht Investments, LLC ("Elbrecht"), E.P.I. of Cleveland, Inc. ("E.P.I."), FA Wilhelm Construction Co., Inc. ("FA Wilhelm"), Gate Precast Company and Gate Precast Erection (collectively "Gate"), JACCO & Associates, Inc. ("JACCO"), Koch Corporation ("Koch"), Leach & Russell Mechanical Contractors, Inc. ("Leach & Russell"), Long Fence Company, Inc. ("Long Fence"), Porta-King Building Systems ("Porta-King"), Roth Bros., Inc. ("Roth"), Schindler Elevator Corporation ("Schindler"), and Sexson Mechanical Corporation ("Sexson").

Each of Welty's subcontracts contained the following provisions regarding mediation and arbitration in Article 37 of the subcontract:

> Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Article 24 and except those waived in this Subcontract, shall be subject to

3

> mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

> \* \* \* \* \*

> The Subcontractor agrees that the Contractor may, in its sole discretion, elect arbitration with respect to any dispute or claim arising out of or relating to this Subcontract or the breach or performance hereof, and if arbitration is so elected by the Contractor, then the arbitration shall be conducted and decided by a private arbitrator . . . .

Appellant's App. pp. 307-08.

Fedreau became dissatisfied with Welty's performance on the project. On November 16, 2011, Fedreau filed suit against Welty, as well as against OFIC on its bond, alleging breach of contract, breach of bond, fraud, and bad faith. Among other claims, the complaint alleged that Welty ran up the cost of the project by requesting various subcontractors to perform unnecessary work in excess of the original scope of the project without prior approval from Fedreau. Fedreau also asserted that Welty was not timely paying its subcontractors, despite full payment for approved work from Fedreau to Welty, which ultimately resulted in numerous mechanic's liens being recorded by subcontractors against the property. Fedreau demanded that Welty obtain removal of the liens "by discharging them through payment or by substituting a bond for the lien(s)," but Welty did not do so. Id. at 82. The complaint sought damages from Welty and/or OFIC in the amount of $6,401,015.18.

The complaint also noted that on March 28, 2011, Elbrecht had sued Fedreau to foreclose its mechanic's lien; that complaint also named Welty as a co-defendant for

breach of contract and Gate as a co-defendant because of its own mechanic's lien filing that was on record at the time.[1]  On April 25, 2011, Welty filed a motion in that case "To Stay All Court Proceedings Pending Mediation and Arbitration."  Elbrecht App. p. 53. The trial court granted this motion.  Elbrecht and Welty participated in mediation, unsuccessfully, on February 15, 2012.  Elbrecht immediately requested that Welty nominate an arbitrator, and Welty responded by letter on February 21, 2012:  "Welty has not elected whether Elbrecht['s] payment claim will proceed through arbitration." Appellant's App. p. 347.  Gate also participated in mediation with Welty on February 15, 2012, which likewise was unsuccessful.

Welty also engaged in informal settlement negotiations with Leach & Russell regarding payment of its invoices, and in particular whether Welty was required to pay Leach & Russell without Fedreau having first paid to Welty all of Welty's submitted invoices.  A letter from Welty to Leach & Russell dated January 6, 2011, stated in part:

> Welty maintains that the parties should review and seek agreement on the subcontract accounting and additional/extra scope issues before resorting to formal dispute resolution, which again, is unlikely to be a productive exercise so long as Indy Fedreau refuses to pay for the work Welty and Leach & Russell performed.
>
> That said, if Leach & Russell continues to insist upon mediation, Welty can agree to Richard Kraege as a mediator. But Welty encourages Leach & Russell to first consider a meeting to review the issues and accounting before compelling the parties to incur significant costs to engage in mediation under the circumstances above.

---

[1] This lawsuit was consolidated into the present case in May 2012.

<u>Id.</u> at 514. On January 12, 2012, Leach & Russell agreed to the informal meeting "prior to engaging in mediation." <u>Id.</u> at 515.

On January 26, 2012, Welty filed an amended counterclaim in the Fedreau case for breach of contract, declaratory judgment, and promissory estoppel. Welty also sought foreclosure of its own mechanic's lien against the FBI property, in the amount of $6,573,358.58. As part of its mechanic's lien foreclosure count, which was count II of the counterclaim, Welty joined as defendants all of the above-named subcontractors[2] "to answer as to any interest [they] may have in the Property," with respect to mechanic's lien notices that they had filed. <u>Id.</u> at 166-70. The mechanic's lien foreclosure count also stated, "Welty specifically reserves all rights to mandatory mediation and binding arbitration with the Counterclaim Defendants under Article 37 of the subcontracts." <u>Id.</u> at 170. It further stated that the subcontractors "have been named for the sole purpose of permitting [them] to assert their interest in the Property, and without waiving Welty's contractual right to mediation and arbitration . . . ." <u>Id.</u>

The declaratory judgment count of Welty's counterclaim, which was count III, stated, "There exists a controversy regarding Welty's damages and entitlement under the Contract." <u>Id.</u> at 171. This count sought a declaration "that, among other things . . . Welty is not obligated to satisfy the mechanic's liens of its subcontractors without full payment by Indy Fedreau . . . ." Id. at 171-72. This count also stated:

_____

[2] Welty apparently later reached a settlement with Long Fence.

6

> Welty is also entitled to a declaration . . . that its mechanic's lien claim against the property at issue is a valid and subsisting lien against the Property in the amount of $6,573,358.58, . . . and that the lien be foreclosed, that the property be sold as if on execution, that Plaintiff and all co-Defendants who have some interest in the property be required to set forth their various claims or be forever barred, that the liens be marshaled and their priority established according to law, and that the proceeds be applied in payment of Welty's claims and the lien and interest of the other parties.

Id. at 172.

On February 28, 2012, Gate filed a motion "to stay these proceedings pending binding arbitration." Id. at 180. The motion stated that Welty had elected to arbitrate any dispute with Gate, by virtue of its motion to stay the March 2011 lawsuit pending arbitration. The motion further acknowledged that "Welty's joining of the Gate Defendants to [the Indy Fedreau-Welty lawsuit and counterclaims] is proper to preserve their claims and priority" but that staying the action was necessary because of Welty's prior election to arbitrate. Id. at 181. It does not appear the trial court ever ruled on this motion.

A number of subcontractors subsequently filed counterclaims against Welty as part of their answers: Barth, Brown, Certified, Circle B, Door & Hardware, Elbrecht, E.P.I., FA Wilhelm, Gate, Koch, and Sexson. The first of these answers/counterclaims was filed on February 14, 2012, and the latest was filed on March 28, 2012.

On April 4, 2012, Welty and OFIC filed their own "Motion to Stay Welty's Subcontractors' Claims Against Them Pending Mediation and Arbitration." App. p. 269.

7

Other subcontractors filed answers to Welty's counterclaims after this date. The motion only sought a stay of the subcontractors' counterclaims for payments due and owing against Welty and OFIC. It expressly did not seek a stay of litigation between Fedreau and Welty, and it also did not seek to stay mechanic's lien foreclosure cross-claims that the subcontractors had filed against Fedreau. The following subcontractors filed or joined in motions opposing Welty and OFIC's motion to stay: Barth, Becker, Brown, Certified, Circle B, Door & Hardware, Elbrecht, E.P.I., FA Wilhelm, JACCO,[3] Leach & Russell, Schindler, and Sexson. The subcontractors specifically contended that Welty had waived the right to insist upon arbitration of the subcontractors' claims.

On April 25, 2012, counsel for Welty wrote letters to the subcontractors that stated in part, "To the extent we cannot reach an agreement holding your clients claims against Welty in abeyance, Welty elects arbitration of the disputes between them . . . . [I]f we cannot agree on a standstill, liquidating agreement or other arrangement, arbitration will take place in Akron, Ohio." Id. at 516.

On May 24, 2012, the trial court issued its ruling denying Welty and OFIC's motion to stay, agreeing with the subcontractors that Welty had waived its contractual right to insist upon arbitration. On June 4, 2012, Welty and OFIC filed a "Motion to Compel Arbitration and Stay Proceedings." Id. at 549. On June 19, 2012, the trial court ruled that this subsequent motion was "moot" in light of its May 24, 2012 order. Id. at 65. Welty and OFIC initiated this appeal on June 20, 2012. On appeal, a joint appellee's

---

[3] Welty and OFIC assert in their reply brief that JACCO did not join in opposition to the motion to stay, but our review of the CCS indicates that it did.

8

brief has been filed by Barth, Becker, Brown, C.E. Reeve, Certified, Circle B, Door & Hardware, E.P.I., FA Wilhelm, Gate, Leach & Russell, Roth, and Sexson. Elbrecht has filed its own separate appellee's brief.[4]

**Analysis**

None of the parties contend that Article 37 of the subcontracts regarding mediation and arbitration is generally void or unenforceable, or that the disputes between Welty and the subcontractors fall outside its terms.[5] Instead, the subcontractors contend Welty has waived its ability to insist on arbitration of their disputes. Even where parties have entered into a valid and enforceable agreement to submit disputes to arbitration, the right to require such arbitration may be waived. Capitol Constr. Servs., Inc. v. Farah, LLC, 946 N.E.2d 624, 628 (Ind. Ct. App. 2011). A finding of waiver of the right to arbitrate depends primarily upon whether a party has acted inconsistently with that right. Id. Waiver need not be in express terms and may be implied from the acts, omissions, or conduct of the parties. Id. "In determining if waiver has occurred, courts look at a variety of factors, including the timing of the arbitration request, if dispositive motions have been filed, and/or if a litigant is unfairly manipulating the judicial system by

---

[4] On appeal, this leaves AGM, JACCO, Koch, Porta-King, and Schindler without a brief indicating their position in this case. Nonetheless, all parties before the trial court are automatically parties on appeal. See Ind. Appellate Rule 17(A). We also note some confusion in that not all of the parties who are opposing Welty and OFIC on appeal joined in opposing their motion to stay before the trial court. Gate, in fact, had filed its own motion to stay. We need not sort out all of this confusion, or decide whether some parties waived any opposition to Welty and OFIC's motion to stay, given our ultimate holding that the trial court erred in denying that motion altogether.

[5] The subcontractors do assert that OFIC lacks any contractual right to arbitration with them, an assertion that OFIC fails to counteract. We address this issue later in the opinion.

9

attempting to obtain a second bite at the apple due to an unfavorable ruling in another forum." Id. Waiver of a contractual right, including the right to arbitrate, requires a showing of an intentional relinquishment of a known right. Northern Indiana Commuter Transp. Dist. v. Chicago SouthShore and South Bend R.R., 685 N.E.2d 680, 695 (Ind. 1997).

Whether waiver of the right to arbitrate has occurred generally is a question of fact under the circumstances of each case. Id. Regardless, we review de novo a trial court's ruling on a motion to compel arbitration, as well as similar motions that are of the same effect.[6] Id. This is especially true, given that to the extent the trial court had to resolve a "factual" issue regarding waiver, it did so based entirely upon a paper record and, moreover, there does not appear to be any dispute about the underlying facts of this case. In such cases, there is no appellate deference to a trial court's factual findings or judgment. See GKN Co. v. Magness, 744 N.E.2d 397, 401 (Ind. 2001); Williams v. Tharp, 934 N.E.2d 1203, 1215 (Ind. Ct. App. 2010), trans. denied.

We further consider in deciding this case that public policy in Indiana favors enforcement of arbitration provisions. Capitol Constr. Servs., 946 N.E.2d at 628. Additionally, because this case involves interstate commerce by virtue of parties from multiple states, the Federal Arbitration Act and cases decided thereunder applies here.

---

[6] The subcontractors argue in part that Welty and OFIC's original motion to stay was not a motion to compel arbitration. This court, however, has treated other motions, such as motions to dismiss because of an extant arbitration agreement, effectively as motions to compel arbitration. See Capitol Constr. Servs., 946 N.E.2d at 628; Roddie v. North American Manufactured Homes, Inc., 851 N.E.2d 1281, 1284 (Ind. Ct. App. 2006). We will treat the original motion to stay as a motion to compel arbitration.

See MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc., 802 N.E.2d 901, 904 (Ind. 2004) (citing 9 U.S.C. §§ 1, 2). Federal policy, like Indiana's, favors arbitration when possible. Id. at 906. The United States Supreme Court has stated, in light of this policy, that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983).

Before turning to the merits, we acknowledge Welty and OFIC's argument in its opening brief that the trial court should not have even ruled on the waiver issue, but that a ruling on that issue itself should have been submitted to arbitration. See, e.g., Novotny v. Renewal by Andersen Corp., 861 N.E.2d 15, 21 (Ind. Ct. App. 2007) (stating that issues such as waiver of an arbitration clause are to be determined during arbitration). As pointed out by Elbrecht, Welty and OFIC did not make this argument before the trial court, although they were well aware that the subcontractors were relying upon waiver to avoid enforcement of the subcontracts' arbitration provision. Generally, parties cannot raise an argument for the first time on appeal. Leone v. Keesling, 858 N.E.2d 1009, 1015 (Ind. Ct. App. 2006), trans. denied. An exception to this rule is a claim that a trial court lacked subject matter jurisdiction, which may be raised at any time. City of East Chicago v. Copeland, 839 N.E.2d 737, 742 (Ind. Ct. App. 2005), trans. denied. Although Welty and OFIC generically say the trial court here lacked "jurisdiction" to rule on the issue of

11

waiver, they do not explain how this impacted the trial court's <u>subject matter</u> jurisdiction to rule on their motion to stay for purposes of arbitration, nor do they make any response in their reply brief to Elbrecht's claim that they have waived this argument on appeal. As such, we conclude Welty and OFIC have waived their argument that the trial court could not rule on the arbitration waiver issue.

Turning finally to the merits, the subcontractors argue that Welty "elected" to file suit against them, via counterclaims in the Fedreau-Welty lawsuit, without first availing itself (in most cases) of the mediation provision in Article 37 of the subcontracts.[7] This, in turn, resulted in waiver of Welty's ability to insist upon arbitration of its disputes with the subcontractors, pursuant to the second part of Article 37, according to the subcontractors. The subcontractors also contend that Welty was aware, pre-litigation, that they were making claims for payment from Welty, via proofs of claim filed with OFIC and notices of intention to hold a mechanic's lien against Indy Fedreau's property, and essentially that Welty should have been proactive in seeking mediation of all the subcontractors' claims for payment before the filing of the counterclaims.

The difficulty with the subcontractors' overall argument is their repeated insistence that Welty "elected" to sue them and deliberately bypassed Article 37 of the subcontract—both its mediation and arbitration provisions—in doing so. Welty argues that its mechanic's lien foreclosure counterclaim against Indy Fedreau was a compulsory counterclaim under Indiana Trial Rule 13(A). "A compulsory counterclaim is one that

---

[7] As recited earlier, Welty did engage in mediation with Gate and Elbrecht.

'arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.'" Hilliard v. Jacobs, 927 N.E.2d 393, 401 (Ind. Ct. App. 2010) (quoting Ind. Trial Rule 13(A)), trans. denied. The subcontractors have made no attempt to argue that the mechanic's lien foreclosure counterclaim by Welty against Indy Fedreau was not a compulsory counterclaim, and we see no reason why it would not be.

Moreover, and more importantly, the established law in Indiana is that in a mechanic's lien foreclosure action, any and all parties with an interest in the property at issue are necessary parties to the action. Potter v. Cline, 161 Ind. App. 349, 361, 316 N.E.2d 422, 429 n.7 (1974) (citing Demma v. Forbes Lumber Co., 133 Ind. App. 204, 220, 181 N.E.2d 253, 255 (1961)). Indiana Trial Rule 19(A) likewise requires the joinder in any action of any party in whose absence "complete relief cannot be accorded among those already parties," or if the party "claims an interest relating to the subject of the action" and the party's absence may "as a practical matter impair or impede his ability to protect that interest" or leave other parties "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations . . . ." Pursuant to these principles, Welty argues that the subcontractors, who themselves had filed mechanic's lien notices against the Fedreau/FBI property, had to be joined in the mechanic's lien foreclosure counterclaim against Fedreau for there to be a proper adjudication of the foreclosure. Again, the subcontractors make no counterargument on this point. Thus, it is clear that

13

Welty did not "elect" to sue the subcontractors without first engaging in mediation or arbitration, nor did it voluntarily "institute" a legal proceeding, to use the language of Article 37 of the subcontract. Welty's hand was forced by Fedreau's filing of the lawsuit against it, at which time Welty was compelled to countersue for foreclosure of its mechanic's lien and to name the subcontractors as co-defendants on that claim.

The facts of this case are very similar to those addressed by our supreme court in MPACT. In that case, a general contractor was involved in multi-party litigation with its subcontractors and the property owner, including actions for the foreclosure of various mechanic's liens; the general contractor had not initiated the lawsuit. After about six months of "preparing for litigation," the general contractor moved to compel arbitration pursuant to its contracts with the property owner and the subcontractors. MPACT, 802 N.E.2d at 904. In assessing whether the general contractor waived the right to arbitrate its disputes with its subcontractors by actively participating in litigation, our supreme court clearly stated, "The filing of counterclaims and cross-claims does not always indicate active participation in litigation." Id. at 910. Rather, "[a] party should not be held to have waived its right to arbitrate when, in response to a complaint filed against it, it raises counterclaims in order to preserve them." Id. at 910-11. The court also noted that the general contractor had stated in its original answer that it was not waiving its right to arbitration and that it had never filed a motion to dismiss or for summary judgment before asserting its right to arbitration. Id. at 911. The court concluded,

14

"[t]hese facts show that [the general contractor] acted consistently with its right to arbitrate . . . ."[8] Id.

Here, Welty named the subcontractors as necessary co-defendants in its mechanic's lien foreclosure compulsory counterclaim against Fedreau and in the closely-related declaratory judgment count of the counterclaim, which likewise requested foreclosure of the mechanic's lien. The counterclaim expressly asserted that Welty was naming the subcontractors as co-defendants "for the sole purpose of permitting [them] to assert their interest in the Property, and without waiving Welty's contractual right to mediation and arbitration . . . ." App. at 170. It does not appear that any substantive activity or discovery took place in the case before Welty filed its initial motion to stay the proceedings for purposes of mediation and/or arbitration, which was filed before even all of the subcontractors had filed answers to Welty's counterclaim. Welty has never filed any dispositive motions before the trial court, nor can the subcontractors direct us to any unfavorable ruling to which Welty was subjected before it moved to stay the proceedings.[9]

Welty also has consistently and timely invoked its right to mediation and/or arbitration, whether in the present lawsuit or in the earlier-filed lawsuit by Elbrecht. It

---

[8] We acknowledge that this analysis in MPACT may actually be dicta, in that the court had already concluded that the general contractor did not have a contractual right to arbitration of disputes with its subcontractors. Regardless, we assume our supreme court would not have engaged in this analysis of the waiver issue if it did not believe it was legally sound.

[9] Although the subcontractors argue that Welty is attempting a "second bite at the apple" by seeking arbitration in this case, they do not direct us to the first bite Welty supposedly took.

15

did in fact engage in mediation with Elbrecht and Gate pursuant to that first lawsuit. It was engaged in negotiations with Leach & Russell regarding possible mediation, although that negotiation happened to lead to an informal meeting first. On April 25, 2012, Welty clearly indicated in a letter to all the subcontractors that it intended to pursue arbitration. It is true that Welty may not have always acted instantaneously in invoking its right to arbitration, as evidenced by its February 21, 2012 letter to Elbrecht stating after the failed mediation that it had not yet decided whether to pursue arbitration. We do not believe Welty was required to instantly decide whether to proceed with arbitration, and the letter also clearly did not reject Welty's right to arbitrate.

The subcontractors do urge that the declaratory judgment count of Welty's counterclaim was a direct suit against them that did more than merely name them as nominal defendants. They direct us to the language of the count requesting that all co-defendants, which would include the subcontractors, "be required to set forth their various claims or be forever barred . . . ." App. p. 172. This statement, however, came in the context of a mere restatement of the earlier request that Welty's mechanic's lien be foreclosed. We believe it is clear that "forever barred" in the declaratory judgment count requests only that the subcontractors' claims with respect to their mechanic's liens against Fedreau's property be forever barred if they did not participate in the action, not that any claims the subcontractors may have against Welty would be forever barred. We also disagree with the subcontractors' assertion that the filing of the declaratory judgment count was a "dispositive motion." It was only an initial pleading, not a motion to

dismiss, or for judgment on the pleadings, or for summary judgment, or any other motion that might immediately terminate litigation.

The subcontractors also argue that Welty should have sought mediation before the litigation in this case ensued because, essentially, Welty was aware that it owed money to the subcontractors that it was unwilling to pay, as a result of its ongoing dispute with Fedreau. Welty's failure to invoke mediation or arbitration at any time before the present action arose, which it did not initiate but that it was compelled to join, was not a waiver of a right to arbitrate. Rather, this case is akin to Safety Nat'l Cas. Co. v. Cinergy Corp., 829 N.E.2d 986 (Ind. Ct. App. 2005), trans. denied. In that case, an insurer failed to respond to five letters from its insured over a one-and-a-half year period notifying it of a pending lawsuit and requesting coverage. Two months after the insured filed a declaratory judgment action against the insurer, the insurer requested arbitration pursuant to the insurance policy. We held that the insurer's earlier failure to respond to the five letters from the insured did not constitute a waiver of the right to arbitrate, concluding that mere silence by the insurer did not constitute waiver. Safety Nat'l Corp., 829 N.E.2d at 1004-05. Here, similarly, Welty failed to pay the subcontractors' submitted bills, but it never gave any indication that it was going to waive its right to insist upon alternative dispute resolution in the event of litigation. Finally, we believe that to the extent the subcontractors believed Welty erred or violated the subcontract by not seeking mediation before arbitration, their remedy would be to insist upon such mediation between them and Welty. The subcontractors, however, are not currently insisting upon mediation with

17

Welty. In other words, Welty is now insisting upon arbitration, the subcontractors are insisting upon litigation, and no one is asking for mediation.[10]

The subcontractors also contend that Welty is utilizing Article 37 of the subcontract as a tactic to delay making payment to them. Even if that is true, it is unclear what relevance that should have in this case. Welty's conduct throughout has been consistent with its right to insist upon arbitration. Additionally, whether Welty is rightfully delaying making payment to the subcontractors goes to the very heart of the merits of this case. And, that is a matter for an arbitrator or arbitrators to decide. We further observe that whether Welty is required to make immediate payment to the subcontractors on their bills under the subcontract is a legally separate and distinct issue from whether Welty is or was required by the Welty-Fedreau contract to keep Fedreau's property free and clear of any mechanic's liens. Although those liens may have been related to the subcontractors' unpaid bills, Welty could have discharged those liens without paying the subcontractors, for example by posting a bond, as noted in Fedreau's complaint.

In sum, we conclude Welty's conduct here has been very unlike conduct courts have found in other cases to constitute a waiver of the right to arbitration. See, e.g., St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., 969 F.2d 585, 588 (7th Cir. 1992) (finding waiver where party requesting arbitration waited ten months after commencement of lawsuit to request arbitration and did not do so until after filing motion

_____

[10] We thus offer no opinion regarding whether the parties could now be compelled to submit to mediation, if any party requested it.

18

to dismiss or for summary judgment and losing); Tamko Roofing Prods., Inc. v. Dilloway, 865 N.E.2d 1074, 1079-80 (Ind. Ct. App. 2007) (finding waiver where party waited until after plaintiff presented evidence during trial to seek arbitration); JK Harris & Co., LLC v. Sandlin, 942 N.E.2d 875, 884-85 (Ind. Ct. App. 2011) (finding waiver where party requesting arbitration never participated in litigation and waited until after default judgment was entered against it to claim arbitration right), trans. denied. And, according to the United States Supreme Court, we must resolve any doubts here regarding waiver of the right to arbitration against finding such a waiver. See Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25, 103 S. Ct. at 941. As such, we conclude Welty has not waived its right to insist upon arbitration of the claims against it filed by the subcontractors, and the trial court erred in concluding otherwise.

Of course, requiring arbitration of the claims between Welty and the subcontractors will result in a certain amount of piecemeal litigation of this case. The subcontractors also invoke the specter of inconsistent results between the arbitrable and non-arbitrable issues in this case. Regardless, the FAA requires enforcement of arbitration agreements, even if the result is piecemeal litigation and "notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." Id. at 20, 103 S. Ct. at 939. To the extent arbitration of issues between Welty and the subcontractors could affect the remainder of the litigation in this case, the trial court would have the discretion under the FAA to stay that remainder pending arbitration after inquiring into "'the risk of inconsistent rulings, the extent to

19

which parties will be bound by the arbitrators' decision, and the prejudice that may result from the delays.'" Volkswagen of America, Inc. v. Sud's of Peoria, Inc., 474 F.3d 966, 972 (7th Cir. 2007) (quoting AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 242 F.3d 777, 783 (8th Cir. 2001)). But a trial court does not have the discretion to refuse to enforce an arbitration agreement where there has been no waiver of the right to arbitrate. See id. at 971; see also KPMG LLP v. Cocchi, -- U.S. --, 132 S. Ct. 23, 24 (2011).

On that note, we again observe that OFIC is not a party to the arbitration agreement in the subcontracts, and it has not provided us with an argument as to how or why it should be entitled to the benefit of that agreement. On appeal, in Welty and OFIC's joint reply brief, only Welty requests that the subcontractors' claims against it be submitted to arbitration. We reverse the trial court's denials of the motions to stay and to compel arbitration and remand with instructions that arbitration be ordered between Welty and the subcontractors and that the litigation between those parties be stayed. As for OFIC, it still asserts that the subcontractors' claims against it should be stayed pending arbitration. The trial court did not assess whether such a stay only as to OFIC should be ordered; we remand for the trial court to consider that issue, in light of the principles discussed in the previous paragraph.[11]

---

[11] Fedreau had not, at the time of this appeal, moved to stay any part of the proceedings as to it.

## Conclusion

Welty did not waive its right to insist upon arbitration of its disputes with the subcontractors. We reverse and remand for arbitration between Welty and the subcontractors, and for the trial court to assess whether the litigation between OFIC and the subcontractors should be stayed pending that arbitration.

Reversed and remanded.

BAKER, J., and RILEY, J., concur.