

FILED
Sep 18 2013, 5:34 am

CLERK
of the supreme court,
court of appeals and
tax court

**FOR PUBLICATION**

ATTORNEYS FOR APPELLANT:

**DARREN A. CRAIG**
**EDWARD L. HOLLORAN, III**
**JULIA BLACKWELL GELINAS**
Frost Brown Todd, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**RHONDA L. WOOD**
**HARVEY L. LANCASTER**
**DAVID W. STEWART**
**KIRK R. JOCHAM**
Stewart & Stewart Attorneys
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ANONYMOUS, M.D. and LIFE CARE CENTERS OF AMERICA, INC., d/b/a LANE HOUSE, | ) ) ) |
| Appellant-Defendant, | ) ) |
| vs. | )    No. 79A04-1304-CT-185 ) |
| EVELYN HENDRICKS, | ) ) |
| Appellee-Plaintiff. | ) ) |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1210-CT-80

**September 18, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Anonymous, M.D., and Life Care Centers of America, Inc., d/b/a Lane House (collectively "Lane House") appeal the trial court's denial of their motion to compel arbitration in a lawsuit filed by Evelyn Hendricks.  We reverse and remand.

## Issues

The reordered and restated issues before us are:

> I. whether an arbitration agreement signed by Hendricks's health care representative, Marjorie Benge, binds Hendricks; and
>
> II. whether the arbitration agreement is still effective despite the unavailability of the arbitrator named in the agreement.

## Facts

Hendricks was a resident of Lane House, a health care institution, from December 21, 2010 through December 29, 2010.  Prior to her admission to Lane House, Hendricks appointed Benge as one of her three health care representatives.  The document appointing Benge as a health care representative stated, in part, that Benge had the authority to "[c]hoose, employ, consult with and discharge my attending physicians and other health care providers" and to "[i]nstitutionalize and pay for all costs for my care which my representative, based on medical advice, determines to be necessary or advisable for my well-being."  App. p. 59.  The document also stated that Hendricks executed it "under the powers given me by the Indiana Health Care Consent Law, (I.C.

2

16-36-1-1 et seq) and the Indiana Durable Power of Attorney Act (I.C. 30-5-5) . . . ." Id. at 60.

At the time of Hendricks's admission to Lane House, her right arm and wrist were in a cast and she could not sign documents. Benge accompanied Hendricks to a meeting with Lane House's social services director, Paulette Hornback. Among other documents, Hornback presented Hendricks and Benge with a "Voluntary Agreement for Arbitration." Id. at 23. The agreement specifically stated that execution of the agreement was "not a precondition to receiving medical treatment at or for admission to the Facility." Id. at 24. The agreement also provided:

> By signing this agreement, the resident agrees with the Facility that any dispute regarding (1) any services rendered prior to the date of this agreement; (2) any dispute arising out of the diagnosis, treatment, or care of the resident, including the scope of this arbitration clause; or (3) the arbitrability of any claim or dispute, against whomever made . . . shall be resolved by binding arbitration by the National Arbitration Forum, under the Code of Procedure then in effect. Any award of the arbitrator(s) may be entered as a judgment in any court having jurisdiction. Information may be obtained and claims may be filed at any office of the National Arbitration Forum, at www.adrforum.com, or at P.O. Box 50191, Minneapolis, MN 55405. If the National Arbitration Forum is unwilling or unable to serve or the parties mutually agree not to utilize the National Arbitration Forum for whatever reason, then the parties shall mutually agree on some other Alternative Dispute Resolution Service or method to administer the binding arbitration proceeding.

Id. Hendricks expressly instructed Benge to sign all of the admission documents to Lane House on her behalf, including the arbitration agreement. Hendricks did not personally sign it.

On October 26, 2012, Hendricks filed suit against Lane House, alleging she had suffered injuries as the result of negligent medical treatment. Lane House moved to stay the proceedings and compel arbitration. Hendricks responded that the arbitration agreement was ineffective and impossible to perform because in 2009, the National Arbitration Forum ("NAF") had entered into a consent decree with the Minnesota Attorney General barring it from conducting any future arbitrations involving disputes between consumers and businesses. See Minnesota v. National Arbitration Found., No. 27-CV-09-18550 (Minn. Dist. Ct. July 17, 2009); Rivera v. American Gen. Fin. Servs., Inc., 259 P.3d 803, 808-09 (N.M. 2011). On March 22, 2013, the trial court denied Lane House's motion to stay the proceedings and compel arbitration. Lane House now appeals.

## Analysis

### I. Signature of Health Care Representative

The first issue we address is whether Benge had the authority to execute the arbitration agreement on behalf of Hendricks. Lane House contends that Hendricks waived any argument that Benge lacked such authority by not adequately raising it before the trial court. Generally, a party cannot raise an argument for the first time on appeal.

4

Welty Bldg. Co. Ltd. v. Indy Fedreau Co., LLC, 985 N.E.2d 792, 799 (Ind. Ct. App. 2013).

Even if Hendricks had not waived this argument, it would fail on the merits. The document granting Benge status as Hendricks's health care representative explicitly invoked Indiana's Health Care Consent Act, Indiana Code Chapter 16-36-1, and the Power of Attorney Act, Indiana Code Chapter 30-5-5, as its bases.[1] The Health Care Consent Act permits the appointment of a representative to act in all health care matters for the appointor. See Ind. Code § 16-36-1-7. Additionally, Indiana Code Section 30-5-5-16(b)(1) provides that language in a document "conferring general authority with respect to health care powers means the principal authorizes the attorney in fact to . . . [e]mploy or contract with servants, companions, or health care providers to care for the principal." The health care representative agreement in this case did grant such general authority to Benge to act on Hendricks's behalf in all health care matters. The arbitration

---

[1] The document in the record before us appointing Benge a health care representative is dated August 31, 2012, or well after Hendricks's admission to Lane House. After briefing was completed in this case by Lane House's filing of a reply brief, Hendricks filed a "Petition for Leave to Respond to Appellant's Reply," seeking to file an additional brief arguing that this document was not in effect at the time of Hendricks's admission. We have denied this petition by separate order. This is because Hendricks expressly admitted to the trial court that she had appointed Benge as her health care representative prior to her admission to Lane House and she made no argument to the trial court regarding the date of this document. Also, Lane House relied upon and cited this document in its opening brief, (not only its reply brief, contrary to Hendricks's claim), and Hendricks thus had the opportunity to make an argument in her appellee's brief regarding the date of the document, but she did not. In fact, Hendricks also cited and quoted from the document in her brief in support of her arguments. Clearly, Hendricks has waived any argument regarding the effective date of Benge's appointment as a health care representative, having previously failed to make any such argument despite two opportunities to do so. See, e.g., Newland Resources, LLC v. Branham Corp., 918 N.E.2d 763, 770 (Ind. Ct. App. 2009) ("a party cannot argue on appeal an issue that was not properly presented to the trial court"); Town of Chandler v. Indiana-American Water Co., 892 N.E.2d 1264, 1267 (Ind. Ct. App. 2008) (noting rule that no new issues may be raised in a reply brief) (citing Ind. Appellate Rule 46(C)).

agreement here was part and parcel of the contract for the provision of health care services by Lane House to Hendricks, though not a necessary part of the contract. Arguably, Benge had the authority to execute that agreement on Hendricks's behalf.

Not all courts would agree with that conclusion, however. For example, in <u>Life Care Centers of America v. Smith</u>, 681 S.E.2d 182, 186 (Ga. Ct. App. 2009), <u>cert. denied</u>, the court held that an arbitration agreement signed by a limited health care attorney-in-fact, and not a general attorney-in-fact, upon an incapacitated patient's entry into a health care facility was not binding upon the patient. The arbitration agreement in <u>Smith</u>, as here, was not a necessary precondition to admission to the facility. The <u>Smith</u> court said it would not rely upon <u>Sanford v. Castleton Health Care Center, LLC</u>, 813 N.E.2d 411 (Ind. Ct. App. 2004), <u>trans. dismissed</u>, in which this court held that a patient's legal representative had waived the patient's right to a jury trial when executing an arbitration agreement. The <u>Smith</u> court correctly noted that this court was not specifically asked in <u>Sanford</u> to decide whether the representative's authority extended to executing arbitration agreements on the patient's behalf. <u>Smith</u>, 681 S.E.2d at 185 n.2; <u>see also</u> <u>Mississippi Care Ctr. of Greenville, LLC v. Hinyub</u>, 975 So. 2d 211, 218 (Miss. 2008) (where agreement to arbitrate was not necessary part of consideration for patient to receive health care, patient's health care representative lacked authority to bind patient to arbitration agreement); <u>Dickerson v. Longoria</u>, 995 A.2d 721, 739 (Md. 2010) (agreeing with <u>Hinyub</u>).

6

The undisputed facts here, however, are that Hendricks expressly directed Benge to sign the arbitration agreement on her behalf. There is no argument or contention that Hendricks lacked the competency to make such a direction; the reason Hendricks herself did not sign it only appears to be that she was physically unable to do so because of her arm and wrist being injured. Even if we were to conclude that the appointment of Benge as Hendricks's health care representative did not grant Benge the authority to execute the optional arbitration agreement with Lane House, a principal will be bound by a contract signed by an agent if a principal expressly authorized the agent to enter into a contract on behalf of the principal. See Heritage Dev. of Indiana, Inc. v. Opportunity Options, Inc., 773 N.E.2d 881, 888 (Ind. Ct. App. 2002), trans. dismissed. Hendricks expressly authorized Benge to sign the arbitration agreement on her behalf. Under general agency principles, Hendricks is now bound by that signing. Cf. Dickerson, 995 A.2d at 735 (applying general agency principles in deciding appointed health care representative did not possess authority to bind patient to arbitration agreement).

## II. Unavailability of NAF as Arbitrator

Next, we address whether NAF's unavailability to arbitrate any consumer disputes, including the one between Lane House and Hendricks, invalidates the arbitration agreement. We review de novo a trial court's ruling on a motion to compel arbitration. Welty, 985 N.E.2d 798. Indiana public policy favors enforcement of arbitration provisions. Id. Additionally, because this case involves interstate commerce

7

between parties from multiple states,[2] the Federal Arbitration Act and cases decided thereunder applies here. Id. at 798-99. "Federal policy, like Indiana's, favors arbitration when possible." Id. at 799. "The United States Supreme Court has stated, in light of this policy, that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983)).

When determining whether parties have agreed to arbitrate a dispute, we apply state law interpretation principles governing contracts. Blimpie Intern., Inc. v. Choi, 822 N.E.2d 1091, 1094 (Ind. Ct. App. 2005). We must attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. Id. Parties are bound to arbitrate all matters not explicitly excluded that reasonably fit within the language used, although we will not extend arbitration agreements by construction or implication. Id. Furthermore, when interpreting a contract, we must read it as a whole and construe the language so as not to render any words, phrases, or terms ineffective or meaningless. Brownsburg Mun. Bldg. Corp. v. R.L. Turner Corp., 933 N.E.2d 905, 907 (Ind. Ct. App. 2010). Like any other contract, arbitration agreements may be invalidated by generally applicable contract defenses such

---

[2] Life Care Centers of America, Inc., is a Tennessee corporation.

8

as fraud, duress, impossibility, or unconscionability. <u>Brumley v. Commonwealth Business College Educ. Corp.</u>, 945 N.E.2d 770, 776 (Ind. Ct. App. 2011).

Hendricks argues that the outcome of this case is controlled by <u>Geneva-Roth, Capital, Inc. v. Edwards</u>, 956 N.E.2d 1195 (Ind. Ct. App. 2011), <u>trans. denied</u>, <u>cert. denied</u>. <u>Geneva-Roth</u> involved a "payday loan" agreement that contained the following arbitration provision:

> Arbitration: Both parties agree that any claim, dispute, or controversy between us, any claim by either party against the other or the agents, services, or assigns of the other, including the validity of this agreement to arbitrate disputes as well as claims alleging fraud or misrepresentation shall be resolved by binding arbitration by and under the Code of Procedures of the National Arbitration Forum (NAF) at the time the claim is filed. Rules and form of the NAF may be obtained and all claims shall be filed at any NAF office on the World Wide Web at <u>www. arbforum. com</u> or at P.O. Box 50131, Minneapolis, MN 55405. Any arbitration hearing, if one is held, will take place at a location near Customer's residence. Customer's arbitration fees will be waived by the NAF in the event you cannot afford to pay them. This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act 9 USC Section 1–18. Judgment upon the award may be entered by any party in court having jurisdiction. Notice: Without this arbitration agreement, both parties have the right to litigate disputes through the law courts but we have agreed instead to resolve disputes through binding arbitration.

<u>Geneva-Roth</u>, 956 N.E.2d at 1197. After the borrower instituted suit against the lender, the lender moved to compel arbitration based on the above provision. The borrower

9

responded that the arbitration provision was impossible to perform because of NAF's unavailability following the Minnesota consent decree.

The trial court denied the motion to compel arbitration, and we affirmed. Reviewing cases from other jurisdictions, we held that if an arbitration agreement's naming of a specific arbitrator is "integral" to the parties' agreement to arbitrate, then the arbitration agreement becomes null and void due to impossibility of performance if the named arbitrator is unavailable. Id. at 1203. Additionally, Section 5 of the Federal Arbitration Act, 9 U.S.C. § 5, which provides trial courts a mechanism for the appointment of a substitute arbitrator under certain circumstances,[3] cannot be invoked when the naming of a specific arbitrator is "integral" to an arbitration agreement. Id. By contrast, if the naming of a specific arbitrator in an arbitration agreement is merely a matter of "ancillary logistical concern," then the named arbitrator's unavailability to arbitrate does not invalidate the agreement and a substitute arbitrator may be appointed. Id. at 1202.

---

[3] This statute provides in full:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

Reviewing the particular arbitration agreement at issue in Geneva-Roth, we noted, "[a]n express designation of a single arbitration provider weighs in favor of a finding that the designated provider is integral to the agreement to arbitrate." Id. Also, the arbitration agreement stated in mandatory terms that any arbitration "shall" be conducted by NAF and its rules, and that all claims "shall" be submitted to NAF. Id. at 1203. Ultimately, we held that the naming of NAF as arbitrator was "integral" to the arbitration agreement at issue and, therefore, NAF's unavailability to arbitrate rendered the agreement null and void. Id.; see also Apex 1 Processing, Inc. v. Edwards, 962 N.E.2d 663 (Ind. Ct. App. 2012) (reaching same conclusion regarding nearly identical arbitration agreement naming NAF as arbitrator), trans. denied, cert. denied.

The arbitration agreement in the present case, however, contains language that is conspicuously absent from the agreements in Geneva-Roth and Apex 1. Namely, after reciting that NAF was the preferred entity to conduct any arbitration, the agreement goes on to state: "If the National Arbitration Forum is unwilling or unable to serve or the parties mutually agree not to utilize the National Arbitration Forum for whatever reason, then the parties shall mutually agree on some other Alternative Dispute Resolution Service or method to administer the binding arbitration proceeding." App. p. 24.[4] Hendricks attempts to dismiss this sentence as a "passing phrase . . . tacked on the end of the Agreement . . . ." Appellee's Br. p. 10. However, we cannot so easily dismiss the sentence; to do so would effectively render it meaningless, contrary to standard contract

[4] Also, unlike the agreements in Geneva-Roth and Apex 1, the agreement here stated in permissive terms that any dispute "may" be filed with NAF, not that any dispute "shall" be so filed. App. p. 24.

11

interpretation principles. We believe the phrase clearly was put into the agreement for a reason. That reason was to embody the parties' intent that it was not "integral" to the arbitration agreement for NAF to conduct the arbitration and that, if NAF could not or would not conduct the arbitration, it was acceptable to find another entity who would conduct it. In other words, the naming of NAF in the arbitration agreement was only an "ancillary logistical concern" and NAF's current unavailability as an arbitrator does not make it impossible to perform the agreement.

In Crewe v. Rich Dad Education, LLC, 884 F. Supp. 2d 60 (S.D. N.Y. 2012), the court was faced with an arbitration agreement stating in part that, any dispute "shall be resolved exclusively and finally by binding arbitration under the Federal Arbitration Act administered by the National Arbitration Forum (NAF) under the Code of Procedure in effect when the claim is filed," but which also stated, "[w]e will agree on another binding arbitration forum if NAF ceases operations." Crewe, 884 F. Supp. 2d at 67. The court held that the latter sentence "emphatically indicates that the NAF is not integral to the agreement to arbitrate." Id. at 77. It observed, "[w]here the parties' agreement reflects a broader intention to arbitrate even if the designated forum or fora prove unavailable, there is no . . . barrier to the appointment of an alternative forum." Id. at 76; see also In re Checking Account Overdraft Litig., 734 F. Supp. 2d 1294, 1301 (S.D. Fla. 2010) (holding arbitration agreement naming either NAF or American Arbitration Association ("AAA") as arbitrators was not rendered invalid by both NAF's and AAA's

12

unavailability to arbitrate where agreement provided method for selecting alternate arbitrator).

Despite Hendricks's arguments to the contrary, we find <u>Crewe</u> to be legally indistinguishable from the present case. She makes a corollary argument that because the arbitration agreement specified the use of NAF rules of procedure during arbitration, and supposedly only the NAF can utilize those procedures, the agreement is impossible to perform. However, the agreement not only provides for choosing an alternate entity or forum to conduct arbitration, but also an alternate <u>method</u>. This clearly contemplates the use of non-NAF rules of procedure during arbitration if, indeed, only NAF can utilize NAF rules but NAF is unavailable. In sum, we see no reason not to give effect to the plain language of the parties' arbitration agreement, providing for an alternate forum and/or method of arbitration in the event of NAF's unavailability. We reverse the denial of Lane House's motion to stay proceedings and compel arbitration and remand either for the parties to select an alternate forum and/or method of arbitration or for the trial court to select an alternate arbitrator in accordance with Section 5 of the Federal Arbitration Act if the parties cannot reach agreement.

## Conclusion

Benge's signature on the arbitration agreement is binding upon Hendricks under the undisputed facts of this case, and that agreement is not rendered impossible to perform and invalid because of NAF's unavailability to conduct the arbitration. We reverse and remand for further proceedings consistent with this opinion.

13

Reversed and remanded.

CRONE, J., and PYLE, J., concur.