### DAVIS V. IVERSON *et al.*

1.  On a sale of a horse the sellers gave the purchasers the following warranty: "Know all men by these presents, that we have this day sold to the Colman Horse Company, one gray Norman stallion 'Count Rotrow, 487,' and he is free from all incumbrance, and their title to said horse is good, and the above-named horse warranted by his importer, George E. Case, of St. Peter, Minn., to be, with proper care and handling, to be an average foal-getter; and should the above named horse prove to be barren, a horse of equal size and value to be put in his place." *Held,* that by it the sellers did not for themselves warrant the horse to be "an average foal getter," but did undertake that if the horse proved to be "barren" they would put another horse of equal size and value in its place.

2.  Proof that such horse was not an average foal getter did not show a breach of the sellers' warranty.

3.  If the horse was not "barren" within the meaning of the warranty, refusal by the sellers to take him back and put another horse in his place did not constitute a breach of their warranty.

(Syllabus by the court. Opinion filed April 13, 1894.)

Appeal from circuit court, Moody county. Hon. FRANK R. AIKENS, Judge.

Action on two non-negotiable notes. Judgment for plaintiff, and defendants appeal. Affirmed.

The facts are stated in the opinion.

*Murray & Porter* and *Palmer & Rogde,* for appellants.

*Bailey & Voorhees,* for respondent.

KELLAM, J.   This is an action upon two non-negotiable notes.   The complaint is in the usual form, and alleges an assignment of the notes from the payees to the plaintiff.   The answer alleges that the notes were given in part payment of a stallion bought by defendants under the name of the Colman Horse Company, of Whipple, Farley & Co., the payees of the notes, and a warranty thereof in writing as follows:   "Colman, D. T., June 25, 1887.   Know all men by these presents, that we have this day sold to the Colman Horse Company one gray Norman stallion, 'Count Rotrow, 487,' and he is free from all incumbrance, and their title to said horse is good, and the above-named horse warranted by his importer, George E. Case of St. Peter, Minn., to be, with proper care and handling, to be an average foal getter; and should the above-named horse prove to be barren, a horse of equal size and value to be put in his place.   Whipple, Farley & Co."   The answer further sets out facts intended to show a breach of warranty; that the horse was not an average foal getter; and that he was of little or no value for the purpose for which he was bought, which purpose was fully disclosed to the sellers, Whipple, Farley & Co., before and at the time of the purchase and sale.   Upon the trial the court directed a verdict for the plaintiff.   From the judgment entered upon such verdict the defendants appeal.

The law of warranty in personal property sales is pretty thoroughly covered by our Civil Code (Comp. Laws, § 3627 *et seq.*).   While it is averred in the answer that Whipple, Farley & Co. were informed of the purpose for which the defendants desired the horse, and it perhaps is sufficiently alleged that they knew defendants were relying upon their advice and judgment in so purchasing, it is not alleged nor is there any evidence which it is claimed tends to show, that they knew anything concerning the horse, which, if communicated to defendants, would have destroyed the inducement which led them to buy.   There were, then, no facts alleged or proven which

would constitute an implied warranty and breach, under Section 3631, Comp. Laws. The trial court was therefore right in excluding evidence which went only to show that Whipple, Farley & Co. were informed of the purpose for which defendants were buying the horse. Under the issue presented by the answer, such evidence was immaterial. It seems reasonably plain that defendants must rely for their defense upon a breach of the terms of the express warranty set out in the answer, and whatever difficulty there is in the case springs from the diverse contentions of the parties as to the meaning and proper interpretation of such warranty. Defendants contended below, and as appellants they contend here, that Whipple, Farley & Co. warranted the horse to be "an average foal getter." We do not think the instrument will bear that construction. In the absence of any claim of fraud or mistake, the court must take the paper as the one party made and the other accepted it. Reading this paper with the purpose of getting its meaning from its language, we should say without hesitation that the sellers for themselves warranted that the horse was free from incumbrance, and their title was good, and that the horse "was warranted by his importer, George E. Case, of St. Peter, Minnesota, to be, with proper care and handling, an average foal getter." To make the warranty mean anything different from this would require us to essentially change its terms, which, of course, we cannot do. Appellants insist that what immediately follows, to-wit, "and should the above-named horse prove to be barren, a horse of equal size and value to be put in his place," is inconsistent with the provision as to his being an "average foal getter," and makes the meaning of the whole instrument so obscure and ambiguous as to justify and require the admission of extraneous evidence for its explanation. We do not think so. By the terms of the papers the sellers did not warrant the horse to be an average foal getter. They only said that the horse was so warranted by its importer. But they did undertake for themselves that if the horse should

prove barren, then that another of equal size and value should be put in its place. The instrument itself is not ambiguous, and proof that the horse was not an average foal getter would not constitute a breach of the warranty made by Whipple, Farley & Co. Whether the instrument is such a one as both parties would consent to if it were to be done over again cannot qualify or change the legal effect of what they have done. The evidence tended strongly to show that the horse was not an average foal getter, but the same evidence conclusively showed that he was not "barren;" that is, within the meaning of the word as ordinarily used, incapable of getting offspring. If claimed that the word had a technical meaning in the vernacular of horsemen, and so should be given a professional or peculiar significance in this warranty, then its meaning was fixed by the only witness who was interrogated upon the subject as being "unable to get colts." If the horse was not "barren" within the meaning of the warranty, the sellers were not required to take him back and put another in his place; and their refusal to do so did not constitute a defense to their notes.

Several exceptions were taken during the progress of the trial as to the admission and exclusion of evidence. Only one of them, however, is presented in argument. Appellants contend that the court erred in allowing plaintiff to show that one of these notes given by defendants for this horse had gone into judgment, and had been subsequently paid by them. Under the construction we give this warranty, this evidence was entirely immaterial, and worked no injury to defendants, even though it could be maintained that such evidence was inadmissible. The decision of the case did not turn upon a question of fact, but upon the construction of the written warranty, which was a question of law. Upon the issue made by the pleadings in the case and the evidence in support, the trial court was clearly right in directing a verdict for the plaintiff. The judgment is affirmed.