# NAVE v. POWELL.

[No. 7,175.    Filed November 15, 1911.    Rehearing denied March 15.
1912.    Transfer denied February 19, 1913.]

1. APPEAL.—*Briefs.*—*Sufficiency*—*Statement of Substance of Pleadings.*—Where appellant makes a good faith effort to set out the substance of each of the pleadings and gives a reference to the page and lines of the record where the entire pleading is found, so that the court can know by reference to the brief alone the real question attempted to be raised as to the sufficiency of such pleadings, the brief is sufficient to require a consideration of such question.    p. 498.

2. SALES.—*Rescission.*—*Common Law Rule.*—The right to return a warranted article and rescind the contract does not exist at common law, except in cases of fraud or where there is a special contract to that effect, and the purchaser is limited in his remedy to a recovery of damages for the breach of warranty.    p. 504.

3. SALES.—*Warranty.*—*Return of Property and Rescission of Contract.*—*Exclusiveness of Remedy.*—Contracts of sale containing provisions for the return of the property and a rescission of the contract, or for the substitution of other property for that which fails to comply with the warranty, are not treated as exclusive in the remedy provided, unless such intention is clearly expressed by the language and terms of the warranty.    p. 505.

4. SALES.—*Warranty.—Breach.—Limitation of Remedy.*—In a contract of sale, the parties may provide all and entire the remedies contemplated and agreed upon to be applied in the event of a breach of the warranty, in which case they are bound thereby and limited to the remedy, or remedies, so provided. p. 505.

5. SALES. — *Warranty. — Construction Against Warrantor.* — The rule, that an express warranty should be construed most strongly against the party in whose interest the contract was prepared, applies only where there is ambiguity or uncertainty in ascertaining the intent of the parties. p. 506.

6. SALES.— *Warranty.— Construction.— Intention of Parties.*— In construing an express warranty, the object to be attained is the intention of the parties, and such intention must be ascertained, if possible, by the language used, and not by reading into it words that import an understanding wholly unintended and unexpressed when the contract was written, but suggested by some apparent hardship in the enforcement thereof. p. 506.

7. SALES.—*Warranty.—Construction.—Exclusiveness of Remedy.*— A contract of sale, in which the seller of a horse contracted that "in the event the above named stallion, in perfect health with proper usage ＊ ＊ ＊ does not get with foal 50 per cent, ＊ ＊ ＊ then on return ＊ * ＊ in good health and condition I agree to furnish another," etc., and which stated that should the stallion thereafter become injured or disabled through accident or disease, the warranty should be null and void and of no effect and all obligations of the seller considered fulfilled and ended, and that the contract contained all the agreements of warranty connected with such sale, construed in its entirety, limits the buyer's remedy for a breach of the warranty, and an action for damages for such breach will not lie. pp. 506, 508.

8. CONTRACTS.—*Construction.*—The true meaning of any contract is to be ascertained from a consideration of all its provisions in their entirety, and not from a literal or technical construction of any isolated or special clause. p. 508.

From Miami Circuit Court; *Joseph N. Tillett,* Judge.

Action by Alton P. Nave against Oliver M. Powell. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Charles R. Milford,* for appellant.

*Cox & Andrews,* for appellee.

HOTTEL, J.—Action on two promissory notes for $500 each, given by appellee to appellant in payment for a stallion.

Numerous pleadings, by way of special answers and special replies thereto and cross-complaints and special answers thereto, were filed in the case, the sufficiency of each of which was tested by demurrer by each party respectively, and exception to each ruling properly saved. The cause was tried by a jury and resulted in a verdict for appellee in the sum of $98. A motion for a new trial was filed by appellant and overruled by the court with exception to appellant. From a judgment on the verdict this appeal is prosecuted.

The rulings on the pleadings adverse to appellant and the ruling of the court on the motion for new trial are assigned as errors. These rulings on the pleadings are numerous, but inasmuch as it is conceded by appellant that each ruling presents practically the same question, viz., the effect to be given to a written warranty given to appellee at the time of said sale of said horse, and for the further reason hereinafter indicated, we deem it unnecessary to set out each particular pleading and ruling on the demurrer thereto.

Appellant in his original brief concedes that there are but two questions presented by this appeal. ''(1) Whether or not the expense put on the horse for his care, etc., is a legitimate item of damage. (2) The construction to be put on said written warranty of the stallion.'' Appellee, however, insists that appellant, on account of failure to comply with the rules of this court in the preparation of his brief, is not entitled to have either question considered. Appellant in his reply brief in effect concedes that he has not in his original brief incorporated therein the motion for new trial, or any of its grounds, and that he has by such omission deprived himself of the consideration of any of the questions presented by such motion, but, on the other hand, earnestly insists that as to the question presented by the pleading he has not only made a good faith effort to, but has, in fact, set out enough of the substance of each respective pleading to present the real question involved in the ruling of the court on the demurrer thereto, and has thereby fully

brought himself within the spirit of the rules of the court as interpreted by its decisions; that this is especially true with respect to the first paragraph of his reply to appellee's first paragraph of answer, and also with respect to the sixth paragraph of appellee's answer, and the third paragraph of his cross-complaint, the last two being practically the same.

Appellant sets out in his original brief a copy of the written warranty and a copy of a contract of insurance contained in each of said pleadings, and while the respective pleadings are not set out in detail, yet there is such a good-faith effort on the part of appellant to set out the substance of each, with a reference to the page and lines of the record where the entire pleading will be found, that we think that to deprive him of a consideration of the question of the construction to be placed on such warranty and insurance contract, in so far as said pleadings are controlled by the same, would be to require a strictness of compliance with said rules never contemplated or intended by their makers, and wholly unwarranted by the previous decisions of this court.

We think it clear that each member of this court can know by a reference to appellant's brief alone, and without reference to the record, the real question therein attempted to be raised as to the sufficiency of said respective pleadings, in so far as they are affected by said written instruments, which, we think, under the holdings, is sufficient to require a consideration of said question. *Houpt* v. *Dutton* (1908), 170 Ind. 69, 71, 83 N. E. 634; *Hay* v. *Bash* (1906), 37 Ind. App. 167, 169, 76 N. E. 744; *Roberts* v. *Fort Wayne Gas Co.* (1907), 40 Ind. App. 528, 532, 82 N. E. 1135.

A summary of the material allegations of the first paragraph of appellee's answer, to which appellant's said special reply is addressed, is as follows: That plaintiff had been and was on April 21, 1904, engaged in breeding horses, and in importing and selling horses for breeding purposes; that defendant through plaintiff's agent made application to buy such stallion of plaintiff, and that plaintiff through his agent

sold to defendant the horse Major McKinley; that plaintiff was informed and knew the purpose for which said stallion was wanted by defendant, and so knowing sold said stallion for breeding purposes, and said horse so sold constituted the only consideration given for each of said notes; "that plaintiff thereby impliedly warranted said horse to be fit and suitable for breeding purposes and a reasonably sure foal getter." Said paragraph then alleges that defendant "stood said horse for the breeding season of 1904," and advertised him by posting and newspaper notices; that the horse was well patronized by the public; that sixty fruitful mares were bred to him during said breeding season, none of which were gotten in foal; "that said horse was utterly barren and unprolific * * * and * * * incapable of getting any mares with foal" at the time of said sale or thereafter; "that relying on said statements, representations and warranty so made by plaintiff, and believing the same to be true," defendant "purchased said horse for breeding purposes;" that the fact that said horse was "barren and unprolific" could not be detected by a "person of ordinary prudence and skill exercising ordinary care," and was for this reason unknown to defendant, but such facts were well known to plaintiff when he sold defendant the horse; that said horse was wholly worthless, and that therefore the consideration for said horse had wholly failed. The theory of this paragraph of answer is an implied warranty of the breeding qualities of said stallion by plaintiff at the time of the sale, and a breach thereof.

By way of avoidance of the matters alleged in said answer, said first paragraph of reply avers the sale of said stallion for $1,000, for which the notes in suit are alleged to have been given, and avers further the execution and delivery to defendant, as part of said contract of sale of said stallion, "a certain writing" which is set out in said reply and is as follows:

"Walnut Grove Stock Farm, A. P. Nave, Proprietor, Breeder of High Class Percheron Horses.

Attica, Indiana, April 21, 1904.

Know all men by these Presents, That I A. P. Nave, of Attica, Fountain County, Indiana, have this day sold to O. M. Powell of Wagoner of County, State of Indiana the Percheron Stallion Major McKinley No. 19858. For extended pedigree See Certificate of Registry. For the consideration of one thousand dollars ($1000.00) the receipt whereof is hereby acknowledged. In the event that the above named stallion, in perfect health, with proper usage, and the mares to him regularly returned and tried or bred on one full service season's trial does not get with foal 50 per cent, of the producing mares regularly tried and bred to him, then on return of the said staliion to me at Attica, Fountain County, Indiana, during the first week in the month of April next following the full service season first concluded after the date thereof, in good health and condition I agree to furnish the above named purchaser without further charge, another imported or pure bred stallion of equal quality in exchange; but it is expressly provided as a condition of this warranty, that the tally sheet accompanying and delivered with this bill of sale shall be accurately filled out, with date of each service and trial to enable identification of all mares bred, and after being so filled out shall be returned to me at Attica, Fountain County Indiana by registered letter, not later than July 15th, 1905. It is hereby stipulated that a stallion's full service season shall be considered as the period commencing the first day of May and ending the first day of July.

In the event the conditions of the above agreement are not faithfully performed, or should the above named stallion hereafter become injured or disabled through accident or disease, or should any change or alteration be made in this Bill of Sale, not shown by the press copy of same preserved by me, this warranty shall be null and void and of no effect and all obligations incurred by me herein shall be considered fulfilled and ended.

This bill of sale contains all the agreements of warranty or guaranty made by me in the sale of the above mentioned stallion, and it is expressly provided that I shall not be liable for any claim that may hereafter be

made alleging any verbal agreement of myself or agent in the sale of said horse.

In witness whereof I have hereto set my hand and seal this the twenty-first day of April in the year of our Lord Nineteen Hundred Four.

A. P. Nave [Seal]."

The reply then alleges that as a part of the same transaction "plaintiff executed and delivered to defendant a certain written instrument in the following words."

"Walnut Grove Stock Farm, A. P. Nave, Proprietor, Breeder and Importer of Percheron Horses of high class and purest lineage.

Attica, Indiana, April 21, 1904.

This indenture witnesseth:

That whereas O. M. Powell has purchased of the undersigned Alton P. Nave, of Attica, Indiana, the Percheron Stallion, named Major McKinley, numbered 19858, the said Nave hereby agrees with said Powell that if the stallion should die on or before April 21, 1905, from natural causes, said death not to be due from lack of proper care, feed or attention, nor negligence of any kind on the part of said Powell, then on proper proof of the death of said animal, said Powell will be given a credit of ($500.00) on his promissory note drawn in favor of said Nave.

A. P. Nave."

This paragraph of reply then alleges that "said warranty and bill of sale and said bond" as herein set out "were accepted by the defendant as controlling in said transaction at the time of said sale," and were retained by him and "accepted * * * as the only warranty of any kind or character under which said animal was bought and sold, either express or implied, and that there was no verbal agreement subsequent thereto that in anyway affected said warranty" or its terms as set out in said instrument; that defendant at no time demanded another stallion; that plaintiff was at all times ready and in a situation to comply with said warranty by furnishing another stallion on compliance by defendant with the terms of said warranty; that said stallion was delivered to defendant in April, 1904, and at

all times thereafter until his death on November 26, 1904, remained in the care, custody and control of defendant.

The sixth paragraph of defendant's answer alleges "that on the 21st day of April, 1904, and as part of the sale and delivery by plaintiff to this defendant of a percheron stallion, Major McKinley, * * * said plaintiff executed to said defendant his written warranty and obligation or bond in these words and figures to wit." Then follows said contracts of warranty and insurance above set out. This answer then alleges further, that by said writing plaintiff warranted to defendant "all and singular the qualities and usefulness of said stallion as in said warranty and bond set out;" that he (defendant) received and took said horse into his possession, and took him to his home in Fulton county, and "performed all and singularly the obligations of said warranty which devolved * * * upon him" between said date of purchase and November 26, 1904, at which last date said horse died; that defendant immediately notified plaintiff by telegram of the death of said horse, and inquired what to do, and received no answer; that said horse was not injured or disabled by accident or disease, and no change or alteration was made in said bill of sale; that defendant gave said horse proper and sufficient food three times a day (describing the food), and gave him daily exercise (describing it); that defendant relied on said warranty, believed it to be true, advertised said horse for breeding purposes, and had bills and circulars printed, posted and distributed, and publications in newspapers, all at a cost of $300; that defendant engaged help, who together with himself took care of and fed said horse, and "exhibited him and stood him throughout the period of time aforesaid, to defendant's costs in the sum of $500; * * * that said horse was wholly barren and unprolific, and of no value for breeding purposes;" that he was bred to sixty-nine "fruitful mares," none of which "became with foal;" that by reason of the breach of said warranty defendant was damaged

in the sum of $800. "Wherefore defendant files his counter-claim, and prays damages in the sum of $800, with costs."

It will be observed that this paragraph, while denominated an answer, is in fact a counterclaim, and seeks affirmative relief, but the designation or name of the pleading is un-important for the purposes of the question here involved.

The third paragraph of cross-complaint alleges substantially the same facts above set out as contained in said sixth paragraph of answer, and alleges that if the horse "had been as warranted he would have been of the value of $1,000; but in the condition in which he actually was he was of no value; that by the breach of the warranty" defendant has been damaged in the sum of $1,000, and demands judgment in said sum.

It will be seen from the above summary of said pleadings, that the question presented by the rulings on the demurrers thereto turns on the construction to be placed on said contract of warranty. Appellant insists that the warranty is express, and provides all its terms and conditions, and fixes and limits the remedy of appellee for its violation; that under such warranty appellee's only remedy was the return of the horse in good health and condition, with the privilege of getting another. Appellee, on the other hand, insists that the remedy provided in said warranty is not exclusive, but that he has in addition to that provided in the contract his remedy at law for damages for the breach of the warranty.

At common law the remedy allowing the return of the warranted article and rescission of the contract does not exist except in cases of fraud or by special contract 2.    to that effect, and the purchaser is limited in his remedy to a recovery of damages for the breach of the warranty. Mechem, Sales §1805; *Lynch* v. *Curfman* (1896), 65 Minn. 170, 68 N. W. 5; *Close* v. *Crossland* (1891), 47 Minn. 500, 50 N. W. 694; *Hoadley* v. *House* (1859), 32

Vt. 179, 76 Am. Dec. 167; *Hoover* v. *Sidener* (1884), 98 Ind. 290; *Marsh* v. *Low* (1876), 55 Ind. 271.

Contracts, therefore, which contain a provision for the return of the property and a rescission of the contract, or

3.  for the substitution of other property for that which fails to comply with the warranty, are not treated as exclusive in the remedy provided, unless such intention is clearly expressed by the language and terms of the warranty.   30 Am. and Eng. Ency. Law (2d ed.) 197; Mechem, Sales §1807; *Elwood* v. *McDill* (1898), 105 Iowa 437, 442, 75 N. W. 340; *Jas. H. Love & Co.* v. *Ross, Crawford & Graham* (1893), 89 Iowa 400, 402, 56 N. W. 528; *Fitzpatrick* v. *D. M. Osborne & Co.* (1892), 50 Minn. 261, 52 N. W. 861; *Douglass Axe Mfg. Co.* v. *Gardner* (1852), 10 Cush. (Mass.) 88.

Giving this rule its broadest application, we are unable to place on this contract the construction and meaning contended for by appellee, and evidently placed on it by the

4.  lower court.   It must not be forgotten that in contracts of warranty, the same as in all other contracts, the contracting parties have a perfect right to put into such contract all its terms and conditions, and provide all and entire the remedies contemplated and agreed on by the parties.   On this subject the Supreme Court of this State said in the case of *Brown* v. *Russell & Co.* (1886), 105 Ind. 46, 52, 4 N. E. 428: "Of course, it was competent for the parties to contract with each other in relation to the extent, terms and conditions of the warranty, and to impose such limitations and restrictions thereon as they might mutually agree upon."   The same rule is expressed in the case of *Bomberger, Wright & Co.* v. *Griener* (1865), 18 Iowa 477, 480.   When the parties do agree on such remedies, and their contract by its terms expresses a clear intent and purpose in that respect, they are bound thereby and limited to the remedies or remedy so provided.   *F. C. Austin Mfg. Co.*

v. *Clendenning* (1899), 21 Ind. App. 459, 465, 52 N. E. 708; *Nichols-Shepard Co.* v. *Rhoadman* (1905), 112 Mo. App. 299, 87 S. W. 62; *Main* v. *Griffin* (1906), 141 N. C. 43, 53 S. E. 727; *Avery Planter Co.* v. *Peck* (1902), 86 Minn. 40, 89 N. W. 1123.

But it is insisted by appellee that there is another rule which should be observed in construing this contract, viz.,

5. That it should be construed most strongly against the party by whom or in whose interest it was prepared.

6. It is only where there is ambiguity or uncertainty that this rule of construction is called into operation. The rules for the interpretation of express warranties do not essentially differ from those applied to other contracts. In construing such contracts the object to be attained is the intent of the parties, but this intent must be ascertained if possible by the language which the parties have themselves adopted and used in such contract, and not by reading into it words that import an intent and understanding wholly unintended and unexpressed when the contract was written, but suggested by some apparent hardship in the enforcement thereof. *Brown* v. *Russell & Co., supra; Conant* v. *National State Bank* (1889), 121 Ind. 323, 324-327, 22 N. E. 250; *Shirk* v. *Mitchell* (1894), 137 Ind. 185, 190, 36 N. E. 850; *Reeves & Co.* v. *Byers* (1900), 155 Ind. 535, 58 N. E. 713; *Sullivan Mach. Co.* v. *Breeden* (1907), 40 Ind. App. 631, 82 N. E. 107.

It will be observed that there is in fact no absolute unconditional warranty provided by the terms of this contract.

7. In other words, appellant did not expressly warrant the stallion Major McKinley *to be a good breeder or foal getter, etc.,* but the warranty is a conditional or qualified and a limited warranty only, viz., "In the event that the above named stallion, in perfect health, with proper usage * * * does not get with foal 50 per cent, * * * then on return * * * in good health and condition I agree to furnish * * * another," etc.

On the interpretation of this language the case of *Davis* v. *Iverson* (1894), 5 S. Dak. 295, 58 N. W. 796, is in point. The warranty in that case was in the words following: " 'Colman, D. T., June 25, 1887. Know all men by these presents, that we have this day sold to the Colman Horse Company one gray Norman stallion, "Count Rotrow, 487," and he is free from all incumbrance, and their title to said horse is good, and the above named horse warranted by his importer, George E. Case of St. Peter, Minn., to be, with proper care and handling, an average foal getter; and should the above-named horse prove to be barren, a horse of equal size and value to be put in his place. Whippel, Farley & Co.' " The court in construing the language of this warranty, at page 297 of their opinion, said: "Reading this paper with the purpose of getting its meaning from its language, we should say without hesitation that the sellers for themselves warranted that the horse was free from incumbrance, and their title was good, and that the horse 'was warranted by his importer, George E. Case, of St. Peter, Minnesota, to be, with proper care and handling, an average foal getter.' To make the warranty mean anything different from this would require us to essentially change its terms, which, of course, we can not do. * * * By the terms of the papers the sellers did not warrant the horse to be an average foal getter. They only said that the horse was so warranted by its importer. But they did undertake for themselves that if the horse should prove barren, then that another of equal size and value should be put in its place." Counsel for appellee say that in this case the holding turns on the fact that the representation in the warranty was that the importer and not the seller warranted the horse to be an average foal getter. But the contract in that case contains all that the contract in the case at bar contains. It has a very similar provision for the return of the horse in case of his failure to prove a good foal getter. The fact that the contract contains a provision that the importers war-

ranted his foal getting qualities certainly would not make the contract any weaker in this respect than the one at bar, which wholly omits an absolute warranty by either seller or importer.

While we recognize the force of the reasons given for the holding in the case of *Davis* v. *Iverson, supra,* we might hesitate to follow it to the extent of holding that damages for a breach of the warranty could be defeated in this case because of the omission of such words of general warranty alone, unsupported by any other language of the contract evidencing such intention of the parties thereto, but taken in connection with the other provisions of this contract, hereinafter referred to, we think such omission significant.

The true meaning of any contract is to be ascertained from a consideration of all its provisions in their entirety, and not from a literal or technical construction of any isolated or special clause of the same. *Wilson* v. *Cooper* (1899), 95 Fed. 625, 628; *Indiana, etc., Oil Co.* v. *Grainger* (1904), 33 Ind. App. 559, 562, 70 N. E. 395; *Beard* v. *Lofton* (1885), 102 Ind. 408, 411, 2 N. E. 129.

There is another clause of this contract which we think must have a material influence in arriving at a correct interpretation of the same. Its provisions are as follows: "should the above named stallion hereafter become injured or disabled through accident or disease, * * * *this warranty shall be null and void and of no effect and all obligations incurred by me herein shall be considered fulfilled and ended.*" (Our italics.)

Another provision is as follows: "This bill of sale contains all the agreements of warranty or guaranty made by me in the sale of the above mentioned stallion."

This stallion was not merely "injured or disabled by disease," but was killed thereby. It will be observed that in case such injury or disability results in death, that it is provided by the above clause not merely that the provision as to the

return of the stallion and his replacement by another shall be avoided, but the provision is that *"this warranty* shall be null and void and of no effect, and all *obligations incurred by me herein shall be considered fulfilled and ended."* (Our italics.)   This language to us seems as definite and certain as it could well have been made.   Indeed, we are forced to the conclusion that appellee was not altogether ignorant of or in doubt as to its meaning when he accepted the warranty, and for this reason he obtained a contract whereby he forced on appellant the assumption of one-half the risk in case such injury or disability should in fact result in the death of such stallion.   Considering the several provisions of this contract of warranty together, and construing the contract in its entirety, and in connection with the contract of insurance executed at the same time, we are forced to the conclusion that in the matter of the provision for the remedy for the breach of the warranty the contract is exclusive, and that appellee is restricted to the remedies therein contained, and that the court below therefore erred in overruling appellant's demurrers to the sixth paragraph of answer and the third paragraph of cross-complaint, respectively, and also in sustaining appellee's demurrer to appellant's special reply to the first paragraph of answer.

Inasmuch as this case must be reversed for these errors, we have not examined the other paragraphs of the pleadings with a view of determining their sufficiency, and express no opinion thereon, further than to say that the construction placed on the written warranty and contract of insurance is the law of the case applicable to all the pleadings the same as to those expressly considered and ruled on.

The judgment is therefore reversed, with instructions to the court below to sustain the demurrer to appellee's sixth paragraph of answer and third paragraph of cross-complaint, and to overrule the demurrer to appellant's

510    APPELLATE COURT OF INDIANA,

City of Bloomington *v.* Chicago, etc., R. Co.—52 Ind. App. 510.

special reply to appellee's first paragraph of answer, and for further proceedings not inconsistent with this opinion.

Note.—Reported in 96 N. E. 395. See, also, under (2) 35 Cyc. 434; (3, 4) 35 Cyc. 437; (5) 35 Cyc. 412; (8) 9 Cyc. 579. As to rescission of sale for fraud in obtaining credit, see 18 Am. St. 362. As to what defects constitute breaches of warranty of soundness, see 53 Am. Dec. 173.