



FILED

Feb 12 2026, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N  T H E

# Court of Appeals of Indiana

Joseph S. Rechlicz, et al.,

*Appellants-Plaintiffs*

v.

Price Point Builders, LLC,

*Appellee-Defendant*

---

February 12, 2026

Court of Appeals Case No.
25A-PL-1071

Interlocutory Appeal from the Lake Superior Court

The Honorable John M. Sedia, Judge

Trial Court Cause No.
45D01-2211-PL-647

---

**Opinion by Judge DeBoer**
Judges Brown and Altice concur.

**DeBoer, Judge.**

## Case Summary

[1] Joseph and Melissa Rechlicz entered into a series of contracts with Price Point Builders, LLC (Price Point) for the construction of a single-family home. Two of those contracts—a construction agreement and a limited warranty agreement—contained provisions providing that any dispute relating to the agreements was subject to arbitration in accordance with the rules of the American Arbitration Association (AAA). Fourteen months after the Rechliczes sued Price Point for alleged defects in the construction, Price Point moved to compel arbitration, which the trial court granted.

[2] In this interlocutory appeal, the Rechliczes argue that the trial court's decision was erroneous for two reasons: (1) under the parties' agreements, "arbitration [was] optional, rather than mandatory," and (2) in any event, Price Point's "conduct demonstrate[d] a waiver of the arbitration agreement." Appellants' Brief at 16, 21. Because the Rechliczes' claims arise under the limited warranty agreement—which mandates arbitration—and because the court did not err in finding that Price Point did not waive its right to compel arbitration, we affirm.

## Facts and Procedural History

[3] Under the construction agreement, Price Point agreed to construct a home for the Rechliczes in Highland. Several months after executing that agreement, the parties signed a limited warranty agreement outlining the warranties that Price Point gave the Rechliczes in relation to the construction. Though both

agreements contained arbitration provisions, they differed in two key respects. First, the construction agreement provided that any dispute relating to that agreement would be "subject to arbitration *at the option* of either [the Rechliczes] or [Price Point][.]" Appellants' Appendix Vol. 2 at 163 (emphasis added). In contrast, the limited warranty agreement contained mandatory language providing that any dispute "*shall* be resolved by arbitration[.]" *Id.* at 189 (emphasis added). Second, the construction agreement specified that any party wishing to exercise the option to arbitrate must do so "within a reasonable time after the dispute has arisen." *Id.* at 164. But the limited warranty agreement contained no time limit in which a party was required to invoke arbitration, nor any other procedural prerequisite to arbitration.

[4] While the agreements differed in these respects, they both similarly provided that arbitration would proceed in accordance with the rules of the AAA. Under the construction agreement, any dispute was "subject to arbitration . . . in accordance with the Arbitration Rules of the [AAA][.]" *Id.* at 163-64. Likewise, the limited warranty agreement stated that "[a]rbitration shall proceed in accordance with the currently applicable rules of the [AAA], or any alternate form of arbitration satisfactory to both parties." *Id.* at 189.

[5] After Price Point constructed the home, the Rechliczes allege that they discovered numerous issues with the quality of Price Point's workmanship and supposed defects with the construction. The Rechliczes unsuccessfully attempted to informally resolve those issues through demand letters before initiating this lawsuit. Their complaint did not explicitly refer to the

construction agreement or the limited warranty agreement but did allege that Price Point had built a home for them "[p]ursuant to a contract" and had refused to repair deficiencies in the construction. *Id.* at 30.

[6] Fourteen months after the complaint was filed, Price Point moved to "compel arbitration and stay all trial dates and proceedings[.]" *Id.* at 141. In their written opposition to that motion, the Rechliczes argued that Price Point had waived the right to compel arbitration because it had "actively participated in [] litigation." *Id.* at 218. Price Point's supposed acts of waiver included, inter alia, (1) waiting more than a year after the complaint was filed to move to compel arbitration; (2) participating in setting case management deadlines and other procedural matters; (3) answering written discovery and engaging in motion practice regarding discovery disputes; and (4) moving to compel arbitration only after the trial court sanctioned Price Point for failing to attend a scheduled deposition. As the Rechliczes' attorney summarized at the hearing on the motion to compel:

> [Price Point] delayed its request for [fourteen] months. . . . Filing joint motions, the joint case management order, a jury trial request, all demonstrated [] separate and [distinct] intentions to litigate. [Price Point] has unmistakenly waived its right to arbitrate through its actions, stipulations[,] and delays.

Transcript at 13. For its part, Price Point contended that any delay had been caused by the Rechliczes' decision to file in court rather than proceeding directly to arbitration, and that Price Point was "allowed to take [its] time to

decide which way [it] would like to go and in this instance [it has] not waived [its] rights for arbitration." *Id.* at 15.

[7] After the hearing, the trial court issued an order granting the motion to compel arbitration. It reasoned, in part, that there was no dispute that both the construction agreement and limited warranty agreement "required the submission of disputes with Price Point to arbitration[,]" and that "[n]ot enough had been done in this case and not enough time ha[d] passed to demonstrate that Price Point, notwithstanding its immediate failure to invoke the arbitration requirements, had . . . waived its right to enforce the arbitration requirement[.]" Appellants' App. Vol. 2 at 23, 26.

[8] The Rechliczes filed a motion to correct error in which they argued, for the first time, that the optional arbitration provision in the construction agreement "did not indicate an agreement or make it mandatory that claims solely be brought to arbitration." Appellants' App. Vol. 3 at 112. Instead, they asserted the construction agreement gave Price Point the option to compel arbitration only "within a reasonable time after a claim was made[,]" which it had failed to do. *Id.* at 113. In response, Price Point argued that the limited warranty agreement mandated that the parties submit their dispute to arbitration because it used "the imperative [language] 'shall be resolved[.]'" *Id.* at 171.

[9] After a hearing on the motion to correct error, the trial court denied the motion. The Rechliczes filed a motion for interlocutory appeal under Appellate Rule 14(B), which this Court granted.

## Discussion and Decision

[10] In an appeal following a motion to correct error, our review necessarily involves both the motion to correct error and the underlying order. *Coronado v. Coronado*, 243 N.E.3d 1121, 1124 (Ind. Ct. App. 2024). The denial of a motion to correct error is reviewed for an abuse of discretion, which "occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Id.* (quoting *Ind. Bureau of Motor Vehicles v. Watson*, 70 N.E.3d 380, 384 (Ind. Ct. App. 2017)). When a motion to correct error involves questions of law, we review those questions de novo, giving no deference to the trial court's legal conclusions. *Id.* Here, the underlying order was on a motion to compel arbitration. Whether to compel arbitration implicates issues of contract interpretation and is thus a question of law subject to de novo review. *Decker v. Star Fin. Grp., Inc.*, 204 N.E.3d 918, 920-21 (Ind. 2023).

[11] Indiana's policy favoring arbitration agreements "is reflected in the Indiana Uniform Arbitration Act, Indiana Code chapter 34-57-2, which provides that '[an arbitration agreement] is valid, and enforceable, . . . except upon such grounds as exist at law or in equity for the revocation of any contract.'" *Taylor Bldg. Corp. of Am. v. Milton*, 271 N.E.3d 626, 630 (Ind. Ct. App. 2025) (quoting Ind. Code § 34-57-2-1(a)), *reh'g denied*. When a party moves to compel arbitration, "the court shall order the parties to proceed with arbitration" upon a showing of "an agreement [to arbitrate], and the opposing party's refusal to arbitrate[.]" I.C. § 34-57-2-3(a); *see also Koors v. Steffen*, 916 N.E.2d 212, 215

(Ind. Ct. App. 2009) ("Once the court is satisfied that the parties contracted to submit their disputes to arbitration, it is required by statute to compel arbitration."), *reh'g denied.*

A party seeking to compel arbitration must establish two elements. First, they "must demonstrate the existence of an enforceable agreement to arbitrate the dispute." *Safety Nat'l Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 1000 (Ind. Ct. App. 2005), *trans. denied.* Second, they "must prove that the disputed matter is the type of claim that the parties agreed to arbitrate." *Id.*

Here, the parties do not dispute that the construction agreement and limited warranty agreement contain arbitration provisions, but they contest how those agreements should be construed and whether Price Point waived its right to compel arbitration. We first note that because the parties' agreements incorporated the AAA rules, it's not obvious that these gateway questions of arbitrability were properly decided by the trial court. As our Supreme Court held in *Illinois Cas. Co. v. B&S of Fort Wayne Inc.*,

> an agreement to arbitrate in accordance with the AAA or similar rules represents clear and unmistakable evidence that the arbitrator shall have the power to exclusively decide the arbitrability of any claim. Thus, if the parties entered into an arbitration agreement that incorporated these rules, arbitrability must be decided by an arbitrator.

235 N.E.3d 827, 837-38 (Ind. 2024) (internal quotation marks omitted); *see also Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016) (explaining that questions of arbitrability include "'whether the parties are bound by a given arbitration

clause' or whether 'an arbitration clause in a concededly binding contract applies to a particular type of controversy'" (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S.79, 84 (2002)).

At any rate, neither the Rechliczes nor Price Point disputed at any point in these proceedings that questions of arbitrability could be ruled on by the trial court, so we follow the parties' lead and assume without deciding that those issues were properly resolved by the court. *See Welty Bldg. Co. v. Indy Fedreau Co.*, 985 N.E.2d 792, 799 (Ind. Ct. App. 2013) (finding that a party "waived their argument that the trial court could not rule on the arbitration waiver issue"). Accordingly, we turn to whether the terms of the agreements at issue require the parties to arbitrate and, if so, whether Price Point waived arbitration.

## 1. The Arbitration Provisions

On appeal, the Rechliczes first argue that the parties' agreements do not require them to participate in arbitration because "[t]he contract contains only an optional clause permitting arbitration, and neither party invoked or attempted to enforce that provision until 437 days after the [c]omplaint was filed." Appellants' Br. at 13. While Price Point concedes that the construction agreement requires arbitration only at the option of a party, it contends that the Rechliczes' claims are governed by the "mandatory arbitration provision" in the limited warranty agreement. Appellee's Br. at 19. We agree with Price Point.

[16] When interpreting an arbitration provision, we apply general contract interpretation principles. *Decker*, 204 N.E.3d at 920. "The goal of contract interpretation is to ascertain and give effect to the parties' intent as reasonably manifested by the language of the agreement." *Id.* (quoting *Reuille v. E.E. Brandenberger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008)). As with all contracts, clear and unambiguous language in an arbitration provision "must be given its plain and ordinary meaning." *Id.* at 920-21 (quoting *Reuille*, 888 N.E.2d at 771).

[17] The parties have effectively argued past each other as to whether the construction agreement or the limited warranty agreement controls. In fact, the Rechliczes have all but failed to acknowledge the existence of the limited warranty agreement, as they did not mention it in their opening brief and referred to it only once in their reply brief. Even then, they did so only to summarily assert that Price Point "ignored the requirements of the Construction Agreement and the Limited Warranty[.]" Appellants' Reply Br. at 23. At the same time, the Rechliczes' reliance on the construction agreement's optional language—and the procedural prerequisites to arbitration it imposed—is misplaced because their claims seek to recover damages for alleged breaches of the limited warranty agreement, which are subject to the mandatory arbitration provision contained in that agreement.

[18] The construction agreement's optional arbitration provision applies only to "claims and disputes relating to [that] agreement[.]" Appellants' App. Vol. 2 at 163. Had the Rechliczes' alleged that Price Point failed to construct the home

or otherwise perform under the construction agreement, they would be correct that this dispute pertains to that agreement. But the complaint did not do so and instead alleged that Price Point failed to construct the home "in a workmanlike manner" and then refused to cure construction defects. *Id.* at 31. These allegations fall squarely within the limited warranty agreement. The purpose of a warranty contract, after all, is to "provide all and entire the remedies contemplated and agreed upon by the parties." *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 952 n.12 (Ind. 2001) (quoting *Nave v. Powell*, 96 N.E. 395, 399 (Ind. App. 1911)). Though the complaint did not explicitly say as much, in seeking damages for Price Point's allegedly shoddy work and failure to cure defects in the construction, the Rechliczes necessarily pursued remedies under the limited warranty agreement.

[19] The limited warranty agreement expressly provides that any claim for breach of warranty "*shall* be resolved by arbitration[.]" Appellants' App. Vol. 2 at 189 (emphasis added). Unlike the construction agreement, the limited warranty agreement contains no time limitation or other procedural prerequisite Price Point was required to satisfy before moving to compel arbitration. While we later consider whether Price Point's delayed invocation of the limited warranty agreement's arbitration provision demonstrates its waiver of arbitration, *see infra* Section 2, the timing of the arbitration request does not change the fact that "[t]he language of the agreement is unambiguous and clearly evinces the parties' intent to submit disputes . . . to binding arbitration." *Doe 1 v. Carmel Operator, LLC*, 144 N.E.3d 743, 752-53 (Ind. Ct. App. 2020) (enforcing a

mandatory arbitration provision requiring the parties to submit "all disputes" to "binding arbitration"), *summarily aff'd in relevant part by* 160 N.E.3d 518, 521 (Ind. 2021).  As such, the trial court did not err when it found that the parties agreed to submit the Rechliczes' claims to mandatory arbitration.

## 2. Waiver

The Rechliczes further argue that even if the parties otherwise agreed to arbitrate this dispute, Price Point's "conduct demonstrates a waiver of the arbitration agreement."  Appellants' Br. at 21.  The Rechliczes are correct that as with any other contractual right, a party may waive "the right to require [] arbitration[.]"  *Capitol Constr. Servs., Inc. v. Farah, LLC*, 946 N.E.2d 624, 628 (Ind. Ct. App. 2011).  However, "[w]aiver of a contractual right, including the right to arbitrate, requires a showing of an intentional relinquishment of a known right."  *Welty Bldg. Co.*, 985 N.E.2d at 798.

The Rechliczes raise two primary points of contention with respect to waiver.  First, they contend "the trial court misconstrued" federal Supreme Court precedent in concluding that it was prohibited from considering "any prejudice to the Rechliczes in determining whether or not Price Point waived its right to stay litigation and compel arbitration."  Appellants' Br. at 39; Appellants' App. Vol. 2 at 26.  Second, the Rechliczes argue that the court erred in concluding that Price Point had not waived the right to compel arbitration and assert Price Point's "litigation conduct [was] overwhelming and essentially undisputed."  Appellants' Br. at 21.  We address these contentions in turn.

## A. Prejudice

In determining that any prejudice suffered by the Rechliczes was irrelevant to waiver, the trial court relied on *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). In that case, the Supreme Court overturned federal circuit court precedent that waiver under the Federal Arbitration Act (FAA) required a showing that the party seeking to compel arbitration "acted inconsistently with that right [and] prejudiced the other party by its inconsistent actions." *Id.* at 411 (quoting *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1117 (8th Cir. 2011)). In rejecting that rule, the Court reasoned:

> Outside the arbitration context, a federal court assessing waiver does not generally ask about prejudice. Waiver, we have said, "is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal quotation marks omitted). To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party. That analysis applies to the waiver of a contractual right, as of any other. As Judge Colloton noted in dissent below, a contractual waiver "normally is effective" without proof of "detrimental reliance." So in demanding that kind of proof before finding the waiver of an arbitration right, the Eighth Circuit applies a rule found nowhere else—consider it a bespoke rule of waiver for arbitration.

*Id.* at 417 (internal citations other than *Olano* omitted).

The parties here disagree as to whether *Morgan* prohibited the trial court from considering prejudice in its waiver analysis. But, even more to the point, it's

not entirely clear that *Morgan* or any other authority construing the FAA has any bearing on whether the parties should be compelled to arbitrate here. To be sure, neither party has disputed the general applicability of the FAA to their contracts. *See MPACT Constr. Grp. v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 904 (Ind. 2004) ("The [FAA] applies to written arbitration provisions contained in contracts involving interstate commerce." (citing 9 U.S.C. §§ 1, 2)).[1] But even so, our Supreme Court has held that the FAA preempts state arbitration laws only "to the extent th[ey] [] actually conflict[] with federal law—that is, to the extent that [state law] 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 905 (quoting *Volt Info. Scis., Inc. v. Bd. Of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477 (1989)). Because our "state law is [not] hostile to arbitration[,]" we generally apply state, not federal, law when determining whether to compel arbitration. *Id.*; *see also Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 776 (Ind. Ct. App. 2011) ("State law contract principles apply to determine whether parties have agreed to arbitrate.").

[24] In any event, Indiana law is in congruence with *Morgan* that prejudice is irrelevant to waiver. Indiana courts have long described waiver in the same

---

[1] Indeed, Price Point argued below that the parties' contracts involved interstate commerce because the construction agreement was for "the development of a home, to be financed by a banking transaction, [and] utilizing purchased products and subcontractors from across state lines[.]" Appellants' App. Vol. 2 at 149. The Rechliczes did not contest these assertions.

terms as *Morgan*, that is, as "an intentional relinquishment of a known right[.]"[2] *Tate v. Secura Ins.*, 587 N.E.2d 665, 671 (Ind. 1992) (quoting *Travelers Ins. Co. v. Eviston*, 37 N.E.2d 310, 314 (Ind. App. 1941)). Waiver may be express or, more commonly, "implied by the acts, commissions, or conduct of the parties." *Capitol Constr. Servs.*, 946 N.E.2d at 628. With implied waiver, we look to a variety of factors to determine whether the moving party demonstrated an intent to forgo arbitration in favor of litigation. These "includ[e] the timing of the arbitration request, if dispositive motions have been filed, and/or if a litigant is unfairly manipulating the judicial system by attempting to obtain a second bite at the apple due to an unfavorable ruling in another forum." *Id.* Neither prejudice nor detrimental reliance is a part of that equation. *See Washington Twp. Assessor v. Verizon Data Servs., Inc.*, 43 N.E.3d 697, 704 (Ind. T.C. 2015) ("[A] person who is in a position to assert a right or insist upon an advantage may by his own words or conduct, *and without reference to any act or*

---

[2] That said, at least one panel of this Court has recognized that before *Morgan*, the Seventh Circuit held that prejudice *could* be considered under federal waiver law. *See Professional Constr., Inc. v. Historic Walnut Square, LLC*, 224 N.E.3d 352, 360 (Ind. Ct. App. 2023) ("In considering if waiver has occurred, courts look to a variety of factors, such as: . . . the degree of prejudice that would be suffered by the other party[.]" (citing *Cooper v. Asset Acceptance, LLC*, 532 F.App'x 639, 641 (7th Cir. 2013) (unpublished)). Though we have applied state waiver law here, we do note that while the Seventh Circuit has not yet addressed the effect of *Morgan* on its waiver precedent, the overwhelming majority of circuits interpreting *Morgan* have held that prejudice cannot be considered in the waiver analysis at all. *See Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th 122, 128 (2d Cir. 2025); *White v. Samsung Elecs. of Am., Inc.*, 61 F.4th 334, 339 (3rd Cir. 2023); *Sarver v. Claiborne Senior Living, LLC*, 2025 WL 2911118, at *2 (4th Cir. Oct. 14, 2025) (unpublished); *Garcia v. Fuentes Rest. Mgmt. Servs., Inc.*, 141 F.4th 671, 676 (5th Cir. 2025); *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024); *Parker v. Kearney Sch. Dist.*, 130 F.4th 649, 654 (8th Cir. 2025); *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023); *but see Toastique Holdings, LLC v. C&G Rest. Holdings, Inc.*, 2025 WL 1444545, at *2 (D.C. Cir. May 20, 2025) (unpublished) ("A finding of prejudice is not necessary in order to conclude that a right to compel arbitration has been waived, although 'a court may consider prejudice to the objecting party as a relevant factor' in its waiver analysis." (quoting *Khan v. Parsons Glob. Servs., Ltd.*, 521 F.3d 421, 425 (D.C. Cir. 2008), *reh'g en banc denied*)).

*conduct of the other party affected thereby*, waive such right[.]'" (quoting *Lafayette Car Wash, Inc. v. Boes*, 282 N.E.2d 837, 839 (Ind. 1972)*, reh'g denied*)) (emphasis added), *review denied*.

[25] Of course, many equitable contract defenses, such as estoppel,[3] do turn on whether it would be unfair to one of the parties to enforce a contractual right. *See Tate*, 587 N.E.2d at 671 ("[T]he elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to his detriment." (quoting *Travelers Ins.*, 37 N.E.2d at 314)). One or more equitable defenses might have been available here had the Rechliczes invoked them. *See Doe 1*, 144 N.E.3d at 753 ("Like other contracts, arbitration agreements may be invalidated by generally applicable contract defenses[.]"); *see also* I.C. § 34-57-2-1(a) (an arbitration agreement may be rendered unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract"); *Morgan*, 596 U.S. at 418 ("If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it."). But the

---

[3] Our Tax Court aptly explained the difference between waiver and estoppel as follows:

> While the doctrines of waiver and estoppel are similar, the two are not identical. *See* [*Lafayette Car Wash,* 282 N.E.2d at 839-40]. Indeed, "'[a] person who is in a position to assert a right or insist upon an advantage may by his own words or conduct, and without reference to any act or conduct of the other party affected thereby, waive such right[.]'" *Id.* at 839 (citation omitted). An estoppel, unlike a waiver, does not arise from the words or conduct of a single party. *Id.* at 840. "'To create an estoppel, the words or conduct of the party estopped must be calculated to mislead the other party, and such other party must be misled thereby and induced to act in such a way as to place him at a disadvantage.'" *Id.* (citation omitted).

*Washington Twp. Assessor,* 43 N.E.3d at 704.

Rechliczes did not invoke any defense other than waiver. And while the trial court might have erred by applying federal rather than state waiver principles, the agreement between federal and state law on this point means the court did not reach the incorrect conclusion. In other words, the court did not err when it determined that whether the Rechliczes would be prejudiced by enforcement of the parties' agreement to arbitrate was irrelevant to whether Price Point waived the right to compel arbitration.

## B. Litigation Conduct

Finally, we address the Rechliczes' argument that Price Point "waived its right to arbitrate by participating in litigation[.]" Appellants' Br. at 31. As noted above, "the right to require [] arbitration may be waived by the parties[,]" as with any other contractual right. *Eastridge v. Est. of Rayles*, 177 N.E.3d 875, 879 (Ind. Ct. App. 2021) (quoting *Safety Nat'l Cas. Co.*, 829 N.E.2d at 1004). Waiver turns on whether a "party has acted inconsistently with its right to arbitrate." *Id.* This is a fact-sensitive inquiry that involves an analysis of the waiver factors discussed above, *i.e.*, "the timing of the arbitration request, if dispositive motions have been filed, and/or if a litigant is unfairly manipulating the judicial system by attempting to obtain a second bite at the apple due to an unfavorable ruling in another forum." *Id.* (quoting *Safety Nat'l Cas. Co.*, 829 N.E.2d at 1004).

Indiana's appellate courts have found waiver only in the most blatant of circumstances, and, indeed, this Court has repeatedly recognized that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract

language itself or an allegation of waiver[.]" *Taylor Bldg.*, 271 N.E.3d at 633 (quoting *Welty Bldg. Co.,* 985 N.E.2d at 799). For example, this Court found waiver in *Eastridge* when the defendant ignored the plaintiff's complaint "until five months after the entry of [] default judgment and proceedings supplemental had begun." 177 N.E.3d at 879. Waiver was also found when a defendant moved to compel arbitration after the plaintiff rested its case-in-chief at trial, *Tamko Roofing Prods., Inc. v. Dilloway*, 865 N.E.2d 1074, 1079-80 (Ind. Ct. App. 2007), and when a party moved to compel arbitration after losing a motion for summary judgment, *Fin. Ctr. First Credit Union v. Rivera*, 178 N.E.3d 1245, 1252-53 (Ind. Ct. App. 2021).

[28] These cases reveal two overarching principles Indiana courts have adhered to in the context of arbitration. First, arbitration is not a "magic wand" that a party can invoke after they do not get their way in litigation. *Id.* at 1253. Second, we look unfavorably upon attempts by litigants to compel arbitration at a late stage of litigation, as doing so only "wastes valuable judicial time and resources." *Dilloway*, 865 N.E.2d at 1079-80.

[29] Addressing these principles in reverse order, we first note that despite the complaint pending for over a year before Price Point moved to compel arbitration, this case had made little progress towards a resolution on its merits. As the trial court noted in its order compelling arbitration, discovery proceeded slowly due to a litany of factors, including a clerical error with the court's electronic filing system that prevented Price Point's attorney from receiving notices from the court and a dispute between the parties regarding the manner

in which depositions and subsequent written discovery could be taken. Indeed, the court found—and the Rechliczes do not dispute—that much of the activity in this case occurred after Price Point moved to compel arbitration. Even then, the increased action was a joint effort by the parties "to keep the case moving" while waiting on the court to rule on arbitrability, given that little had been accomplished in the fourteen months after the complaint was filed. Appellants' App. Vol. 2 at 26.

[30]   As to whether the timing of Price Point's motion evidences an attempt to take a second bite at the apple, we agree with Price Point that in light of the slow progress made in the first year of this case, nothing in the record shows that it was "attempt[ing] to manipulate the judicial system" after receiving an "unfavorable ruling[.]" Appellee's Br. at 15. The only "unfavorable ruling" Price Point received was an order requiring it to pay the attorneys' fees incurred by the Rechliczes when Price Point failed to attend a scheduled deposition. But, as noted above, that failure was caused by a clerical error with the court's electronic filing system and, in any event, this Court has never recognized that a court's decision on a discovery dispute constitutes a dispositive ruling for waiver purposes—particularly when little discovery has been done. *See Finlay Props., Inc. v. Hoosier Contracting, LLC*, 802 N.E.2d 453, 456 (Ind. Ct. App. 2003) (finding no waiver when, among other things, the moving party "never filed any dispositive motions, e.g., a motion for summary judgment, and pursued limited discovery in preparation for mediation").

[31] Despite the slow progress in this case before Price Point moved to compel arbitration, the Rechliczes make much of the fact that Price Point did not "mention the arbitration clause or assert a right to arbitrate" in its answer to the complaint. Appellants' Br. at 21. Specifically, they contend that by failing to plead arbitration as an affirmative defense, Price Point "gave the Rechliczes and the court every reason to believe that it intended to resolve the dispute in court." *Id.* at 22. We disagree because the right to compel arbitration is not in the nature of an affirmative defense and need not be asserted in a defendant's answer. *See* Ind. Trial Rule 8(C) (requiring a defendant to assert affirmative defenses in its responsive pleading).

[32] An affirmative defense is one "upon which the proponent bears the burden of proof and which, in effect, admits the essential allegations of the complaint but asserts additional matter[s] barring relief." *Willis v. Westerfield*, 839 N.E.2d 1179, 1185 (Ind. 2006) (quoting *Paint Shuttle, Inc. v. Cont'l Cas. Co.*, 733 N.E.2d 513, 524 (Ind. Ct. App. 2000), *trans denied*)). In contrast, enforcing an arbitration agreement does not defeat liability to the plaintiff, but "entertain[s] consideration of disputed matters and [] reach[es] an acceptable decision and award, without having to undertake often ponderous and costly judicial proceedings." *Brockmann v. Brockmann*, 938 N.E.2d 831, 836 (Ind. Ct. App. 2010) (quoting *Polinsky v. Violi*, 803 N.E.2d 684, 688-89 (Ind. Ct. App. 2004)), *reh'g denied*, *trans. denied*. So while raising the right to submit a claim to arbitration in a responsive pleading may evidence a defendant's lack of intent to participate in litigation—and indeed may be the best practice—the Rechliczes

are incorrect that Price Point necessarily waived the right to later move to compel arbitration by not pleading the arbitrability of the claims at issue as an affirmative defense. *See MPACT Const. Grp.*, 802 N.E.2d at 911 (finding that whether the defendant invoked arbitration in its answer was one of several factors to consider when analyzing waiver).

[33] We further disagree with the Rechliczes that Price Point acted inconsistently with its right to arbitrate when it moved to assert a third-party complaint against the subcontractor it hired to install insulation in the Rechliczes' home. While our Supreme Court has reasoned that the filing of non-compulsory claims "could be seen as actively participating in the litigation[,] . . . that alone is not sufficient to establish a waiver, particularly in light of [] other facts" to the contrary. *Id.* at 910, 911 ("The filing of counterclaims and cross-claims does not always indicate active participation in litigation."). Indeed, Price Point and the trial court properly recognized that the subcontractor was not a party to the arbitration agreement and therefore could not be compelled to participate in arbitration with Price Point and the Rechlizces. *See Welty Bldg. Co.*, 985 N.E.2d at 803 (explaining that arbitration agreements often result in "piecemeal litigation" when one or more of the parties involved are not required to participate in arbitration). Accordingly, the court got it right when it stayed these proceedings pending the outcome of arbitration, after which Price Point's third-party complaint can proceed through the courts.

[34] For these reasons, we find that the trial court did not err in concluding that the Rechliczes failed to prove that Price Point waived the right to compel arbitration through its litigation conduct.[4]

## Conclusion

[35] We affirm the trial court's judgment.

[36] Affirmed.

Brown, J., and Altice, J., concur.

---

[4] In their reply brief, the Rechliczes ask that we sanction Price Point because its brief contains what the Rechliczes describe as "improper and misleading citations to the record and legal authority." Appellants' Reply Br. at 6. Indeed, Price Point's brief does contain a handful of record and case citations with obvious typos, and Price Point cited one case that does not exist, specifically "*Nat'l Wine & Spirits, Inc. v. Ernst & Young LLP*, 976 N.E.2d 286, 289 (Ind. Ct. App. 2001)[.]" Appellee's Br. at 21. But these incorrect citations appear to us to have been the result of inadvertent typographical errors and did not hinder our review of Price Point's arguments. What's more, we find it hard to believe the Rechliczes' claim that their attorneys "spent in excess of [twenty] hours just attempting to locate [Price Point's] legal citations[.]" Appellants' Reply Br. at 29. For example, we quickly surmised that Price Point intended to cite *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699 (Ind. 2012), *cert. denied*, a case that quoted a 2001 Court of Appeals decision that can be found on page 286 of the Northeastern Reporter Second Series. *Id.* at 706 (quoting *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 289 (Ind. Ct. App. 2001)). Price Point's counsel apparently combined those two case citations without noticing his mistake.

We are mindful that the increasingly prevalent use of generative artificial intelligence (AI) has led many courts to sanction attorneys whose filings included fake case citations. *See Mid Cent. Operating Eng'rs Health and Welfare Fund v. HoosierVac LLC*, 2025 WL 574234, at *3 (S.D. Ind. Feb. 21, 2025) (collecting cases and noting that courts have imposed "[m]onetary sanctions ranging from $2,000 to $5,000" against attorneys who, among other things, cited nonexistent cases). But we also keep in mind that this Court has typically shown grace to practitioners whose citations—though incorrect—appeared to be the result of inadvertent typos. *See McElroy v. Leppert*, No. 25A-MI-255, at *10 (Ind. Ct. App. Sep. 16, 2025) (mem.) (reasoning that a party's "incorrect case citations, failure to provide pin-point citations, attribut[ion of] cited material to the wrong case, and[] crediting [of] decision[s] to the wrong court" were "exasperating," but did not "rise to the level of a flagrant disregard of the form and content requirements of the appellate rules"). Accordingly, while we admonish Price Point's counsel for his failure to adequately proofread and verify several of his legal authorities, we deny the Rechliczes' request to impose sanctions.

ATTORNEYS FOR APPELLANTS

Megan L. Craig
John R. Craig
Craig & Craig, LLC
Merrillville, Indiana


ATTORNEYS FOR APPELLEE

Nathan D. Vis
Vis Law, LLC
Cedar Lake, Indiana

Edward R. Ricci, Jr.
Moore & Portelli
Merrillville, Indiana